**STANBACK et al. v. ROBERTSON.**

No. 6096.

United States Court of Appeals
Fourth Circuit.

Argued June 12, 1950.

Decided July 26, 1950.

H. G. Hudson, Winston-Salem, N. C. (R. C. Vaughn, and Ratcliff, Vaughn, Hudson & Ferrel, Winston-Salem, N. C., on the brief), for appellants.

Robert R. Reynolds, Jr., Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., and Bryce R. Holt, U. S. Atty., Greensboro, N. C., on the brief), for appellee.

Before PARKER, Chief Judge, DOBIE, Circuit Judges and WYCHE, District Judge.

DOBIE, Circuit Judge.

Thomas M. Stanback and Fred J. Stanback, brothers, instituted, in the United States District Court for the Middle District of North Carolina, separate civil actions against the Collector of Internal Revenue for the District of North Carolina, to recover income taxes paid for the year 1941, which they allege were erroneously assessed and collected. The cases were consolidated for trial and, pursuant to a jury verdict, judgment was entered by the District Court dismissing the actions. From that judgment the Stanbacks have appealed to us. Thomas Stanback seeks recovery in the amount of $63,380.46 and Fred Stanback seeks recovery in the amount of $62,756.37.

In 1924, Thomas and Fred Stanback formed a partnership, operating under the firm name of Stanback Medicine Company, for the manufacture and sale of proprietary medicines known as Stanback Headache Powders and Stanback Liver Fixers. A written partnership agreement was first drawn up in 1928 and in 1931 the name of the partnership was shortened to Stanback Company. The volume of business and income of the partnership increased rapidly. In the taxable year in question, gross receipts amounted to $1,136,470.69 and net income to $404,199.80. By 1937 the partnership had accumulated a substantial surplus which was invested in real estate and securities.

In the year 1937, after conferences with bank officials and an attorney, the appellants entered into a new partership arrangement. The validity of this partnership arrangement, for tax purposes, is now before us. The first step in the formation of this new partnership was the organization of a corporation called the Stanco Realty Company. Appellants then transferred to this corporation substantially all of the investment assets of the old partnership in exchange for the capital stock of the corporation. The next step was for the appellants to make gifts in trust to their wives and children. Thomas established three trusts, one for his wife and one for each of his two minor children. The Wachovia Bank & Trust Company and his brother Fred were made co-trustees. Thomas then transferred to each trust 25 shares of stock in the corporation and a 4% interest in the new

partnership, and on December 31, 1938, he transferred an additional 2% interest in the business to each of the trusts. Fred, in like manner established three trusts, one for his wife and one for each of his two minor children, made his brother Thomas and the Wachovia Bank & Trust Company co-trustees, and transferred interests during 1937 and 1938 to each of the three trusts created by him equivalent to the interests transferred by his brother Thomas. Thus, in the taxable year 1941 each trust reported 6% of the income of the business as its distributable share, and the appellants each reported 32%.

The new partnership agreement, dated December 29, 1937, provided that the appellants were to be general partners while the Trustees of the six trusts were to become limited partners. The agreement further provided that the general partners were to have complete control and management of the partnership business, its property and assets, together with the right to determine how the surplus funds of the business should be invested, while the limited partners were to have no voice whatever in the operation of the partnership business. According to the evidence introduced in the trial below, neither the Trustees nor the beneficiaries ever took any part in the business activities of the partnership. The general partners, under the agreement, were entitled to a drawing account of $1,500 per month, which was to be charged first against their share of the profits; but the limited partners were not entitled to withdraw profits unless the general partners determined that the condition of the business warranted a distribution to all partners. The general partners were given exclusive authority to determine what portion of the annual profits should be retained in the business and not distributed to the partners.

In 1941, as we have already stated, each appellant reported 32% of the profits of the partnership business as income to him, though Thomas Stanback received an additional amount of royalties of 2% of the gross sales for formulae, trade-marks and good will, as provided in the partnership agreement. Additional income taxes for the year 1941, in the amounts hereinbefore stated, were assessed against the appellants by the Commissioner upon the theory that the partnership agreement of 1937 was invalid for tax purposes and that each taxpayer should have reported 50% of the net profits of the partnership as income. At the trial below, the jury found that the Trustees for the wives and children of the appellants were not bona fide partners in the enterprise for tax purposes. We think there was substantial evidence to support that finding.

This Court has frequently said that in order for a family partnership to be valid for tax purposes, there must be economic reality and substance in the arrangement. See Ritter v. Commissioner, 4 Cir., 174 F.2d 377; Moore v. Commissioner, 4 Cir., 170 F.2d 191, certiorari denied 337 U.S. 956, 69 S.Ct. 1528, 93 L.Ed. 1756; Economos v. Commissioner, 4 Cir., 167 F.2d 165, certiorari denied 335 U.S. 826, 69 S.Ct. 53, 93 L.Ed. 380; Wilson v. Commissioner, 4 Cir., 161 F.2d 556, certiorari denied 332 U.S. 769, 68 S.Ct. 80, 92 L.Ed. 354; Mauldin v. Commissioner, 4 Cir., 155 F.2d 666; Hash v. Commissioner, 4 Cir., 152 F.2d 722, certiorari denied 328 U.S. 838, 66 S.Ct. 1013, 90 L.Ed. 1614. Cf. Wodehouse v. Commissioner, 4 Cir., 178 F.2d 987. We do not say that a family partnership must be invalid for tax purposes because there may be limited, as well as general, partners. See Commissioner v. Tower, 327 U.S. 280, 290, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135. Nevertheless, applying the test outlined in Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659, we find that in the case before us the requirements of a valid family partnership, for income tax purposes, are not satisfied. In the Culbertson case, 337 U. S. at page 742, 69 S.Ct. at page 1214, 93 L.Ed. 1659, the Supreme Court held that the question is whether " * * * considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is

used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise."

In the instant case, the Trustees and beneficiaries actually contributed to the business no capital other than that received by gift, and no new capital was added to the business. They performed no services; they took no part in the control or management of the business; they exercised no influence over the distribution of income. In fact, it may be said that the Trustees never had absolute control, and the beneficiaries never had actual ownership, of the accumulations of income to the trusts. For example, the partnership agreement states that either of the appellants may assign further portions of their interests to their families or Trustees for them and that if any child should be born after the date of the agreement it should be immediately entitled to an interest in the business equal to that of the other beneficiaries of the trusts assigned to the family into which the child is born, and a duty of reallocating the trust res is then imposed upon the Trustees. The trust agreements further provide that the interest of either wife shall be forfeited if she begins separation or divorce proceedings against her husband and that income distributed to the trusts and not withdrawn by the wives or applied for the use of their children within twelve months shall be added to the principal of the trusts. No business purpose was served by the arrangement here in question, and no other motive besides the desire to reduce their federal income taxes apparently prompted the appellants to establish the new partnership and create the trusts. It might be noted, too, that Thomas Stanback was a co-trustee under the trusts created by Fred Stanback, while Fred Stanback was a co-trustee under the trusts created by his brother, Thomas. See Hash v. Commissioner, 4 Cir., 152 F.2d 722, certiorari denied 328 U.S. 838, 66 S.Ct. 1013, 90 L.Ed. 1614.

One further question is presented by appellants' contention that the prior decision of the Tax Court of the United States in its Docket Numbers 1901 and 1902, entitled "Fred J. Stanback, Petitioner, v. Commissioner of Internal Revenue, Respondent" and "Thomas M. Stanback, Petitioner, v. Commissioner of Internal Revenue, Respondent", are res judicata by way of collateral estoppel. These cases involved the same parties and the same trusts and partnership agreement with which we are now concerned but dealt with the question of income tax liability for the tax years 1938 and 1939 instead of the year 1941.

In Commissioner v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898, the Supreme Court distinguished the operation of the principle of res judicata as an absolute bar from its operation as collateral estoppel and stated in 333 U.S. at pages 597-600, 68 S.Ct. at pages 719, 92 L.Ed. 898.

"The general rule of res judicata applies to repetitious suits involving the same cause of action. * * * The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' Cromwell v. County of Sac., 94 U.S. 351, 352, 24 L.Ed. 195. * * *

"But where the second action between the same parties is upon a different cause or demand, the principle of res judicata is applied much more narrowly. In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' Cromwell v. County of Sac., supra, 94 U.S. 353, 24 L.Ed. 195. And see Russell v. Place, 94 U.S. 606, 24 L.Ed. 214; Southern Pacific R. Co. v. United States, 168 U.S. 1, 48, 18 S.Ct. 18, 27, 42 L.Ed. 355; Mercoid Corp. v. Mid-Continent Co., 320 U.S. 661, 671, 64 S.Ct. 268, 273, 88 L.Ed. 376. * * *

"Income taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action. Thus if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is *res judicata* as to any subsequent proceeding involving the same claim and the same tax year. But if the later proceeding is concerned with a similar or unlike claim relating to a different tax year, *the prior judgment acts as a collateral estoppel only as to those matters in the second proceeding * * * were actually presented and determined in the first suit.* Collateral estoppel operates, in other words, to relieve the government and the taxpayer of 'redundant litigation of the identical question of the statute's application to the taxpayer's status.' Tait v. Western Md. R. Co., 289 U.S. 620, 624, 53 S.Ct. 706, 707, 77 L.Ed. 1405.

"But collateral estoppel is a doctrine capable of being applied so as to avoid an undue disparity in the impact of income tax liability. A taxpayer may secure a judicial determination of a particular tax matter, a matter which may recur without substantial variation for some years thereafter. But a subsequent modification of the significant facts or *a change or development in the controlling legal principles may make that determination obsolete or erroneous, at least for future purposes.* If such a determination is then perpetuated each succeeding year as to the taxpayer involved in the original litigation, he is accorded a tax treatment different from that given to other taxpayers of the same class. As a result, there are inequalities in the administration of the revenue laws, discriminatory distinctions in tax liability, and a fertile basis for litigious confusion. Compare United States v. Stone & Downer Co., 274 U.S. 225, 235, 236, 47 S.Ct. 616, 71 L.Ed. 1013. Such consequences, however, are neither necessitated nor justified by the principle of collateral estoppel. That principle is designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally. *It is not meant to create vested rights in*

*decisions that have become obsolete or erroneous with time, thereby causing inequities among taxpayers.*

"And so where two cases involve income taxes in different taxable years, collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice. *It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged.*" (Italics ours.)

The Tax Court in its opinion in the Stanback cases applied the law as it was outlined in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, as the following quotations from its opinion show:

"The principal question common to Docket Nos. 1901 and 1902 is whether petitioners, as grantors of family trusts, are taxable upon the income thereof under Section 22(a) of the Revenue Act of 1938 and the Internal Revenue Code [26 U.S. C.A. § 22(a)]. Thus again we are called upon to apply what is familiarly known as the doctrine of Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. * *

"* * * We can conclude only that the application of the Clifford doctrine is not called for by reason of the terms of the trusts involved here. * * *

"Respondent, however, argues that the Clifford doctrine should be applied because of the petitioners' control of Stanback Company, partnership interests which constitute the principal asset of the trusts and the sole source of the income with which we are here concerned. * * * It will be noted that the argument is premised on *complete* and *absolute* control over the income and assets of the partnership in the hands of the petitioners. But the facts do not warrant a finding that they had such control. Petitioners were simply the managing partners in a limited partnership. As such they had the powers and duties commonly appertaining thereto. They operated the business, directed policy, made determinations respecting the need for reserves, and, by reason of such powers to an extent

controlled the amounts distributed to the limited partners each year. However, the existence of these powers did not give them the very substantial control required to invoke the application of the Clifford doctrine."

Under the Clifford doctrine, control and the duration of a trust are the important factors in determining to whom income is taxable. Since the decision of the Tax Court in the Stanback cases, however, the Supreme Court has laid down the rule that the validity of a family partnership, for tax purposes, depends upon the bona fide intent of the partners to join together in the conduct of the partnership business. Control is now only one of the many factors which must be considered in making this determination. Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659; Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679; Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135. Mr. Justice Douglas in the Clifford case, supra, did employ the phrase "bundle of rights" but it is evident that he used these words solely in connection with the question of control. 309 U.S. at page 337, 60 S.Ct. at page 557, 84 L.Ed. 788.

In the cases before the Tax Court upon which appellants rely, the facts were substantially the same as in the present case and partnership income was involved in both instances; but it is apparent from the Tax Court's opinion that no question was raised as to the validity of the partnership for income tax purposes. The Tax Court in the Stanback cases was concerned only (as was the Supreme Court in the Clifford case) with the question of the allocation of income for tax purposes and never commented on the question of the validity of the partnership for tax purposes, the fundamental issue in the case now before us. As we have already pointed out, collateral estoppel can be invoked only where the same issue has actually been previously litigated. Here the precise issue before us has not been previously adjudicated and, even if it had been, the law applicable to the situation has been altered by supervening decisions of the Supreme Court.

The judgment of the District Court is affirmed.

Affirmed.