OPINION. Turner, Judge: We have in this case one of those family arrangements which, if given effect, would materially reduce the income tax burden on the William D. West and Herman O. West profits from the operations of the West Brothers partnership, but which, for practical purposes, effected no material change in the partnership or its operations. In short, it was an arrangement whereby the petitioners through their indulgence in certain ritualistic and legalistic formalities sought to spread their own income between themselves and trusts for their children for income tax purpose without any realistic change in the partnership itself. And while it is wholly within the province of a taxpayer to so arrange his affairs within the meaning and spirit of the law that a minimum amount of tax will be required of him, the things done must have substance, if they are to be given the effect desired, and not be merely an arrangement within a family group whereunder the earning of the income actually remains where it was before. Beginning with Lucas v. Earl, 281 U. S. 111, a steady procession of such cases has been before the courts. It is admitted that, in so far as the partnership itself was concerned, no change in its assets or business was intended or resulted from the setting up of the trusts by William D. West and Herman O. West, which are here involved, or the trusts set up by J. A. West. No new capital came into the business and petitioners’ counsel, in his opening statement at the time of trial, specifically disavowed any claim of partnership on the basis of participation by the trustee or any of the beneficiaries individually in the management and operation of the business. It is argued, however, that since capital was an important income-producing factor of West Brothers and petitioners William D. West and Herman O. West made formal assignments in trust of certain percentages of their capital interests, and since Pleasant W. West, as trustee, received distributions from partnership profits and held and invested the moneys so received for the benefit of the beneficiaries named in the trusts, he, as trustee, had succeeded to the ownership of the designated capital interests in the partnership, that the ratable shares of partnership income were in truth and in fact his as trustee, and that as such trustee he, and not William D. West and Herman O. West, is taxable thereon. We are unable to see and understand the arrangement in that light. William D. West and Herman O. West were, and remained, the managers of the partnership and, except in such instances as J. A. West and Wiggins acted with them, made all decisions pertinent thereto. In a realistic sense, the trustee’s rights and powers were limited to such moneys as were actually distributed to him. The capital interests were and remained in and subject to the hazards of the business. While purportedly he held legal title to certain undivided capital interests, the trustee had no right of management or control of such interests. The trustee had no say as to what portion of the partnership profits accruing to the capital interests he was supposed to own could be drawn down by him. Under the partnership agreement, the power of decision as to the distribution of partnership profits was in “a majority in value of the partners,” who were, and at all times continued to be, William D. West and Herman O. West, although the evidence does show that J. A. West and Wiggins were allowed to participate, and did participate, in determining at the end of the year the portion of the year’s profits which actually were distributed. At this point, a comparison of the original partnership agreement with the agreement as changed preliminary to the setting up of the trusts here is, we think, not without significance. By the terms of the original partnership agreement, the partnership profits at the end of the year were to be credited to the various partnership capital accounts, as shown by the books, and when so credited, each partner was at liberty to withdraw in cash the entire amount of such profits from the partnership. Preliminary to the setting up of the trusts herein, however, that provision of the partnership agreement was changed so that thereafter the partnership profits so credited to the capital accounts could be withdrawn only to the extent “agreed to by a majority in value of the partners,” and such majority in value, as noted above, continued to be in William D. West and Herman O. West. A change was also made in the partnership agreement with respect to the partners’ salaries so that instead of fixed salaries stated therein, the partners thereafter were to be allowed the salaries “agreed upon by a majority in value of the partners.” In addition to the amounts received as “salaries,” the brothers West and Wiggins were to receive bonuses, to be fixed by the “majority in value of the partners,” which bonuses were to be charged against the profits for the year; and in 1948 they determined an additional bonus for themselves and divided it among themselves on the basis agreed upon. The profits available for credit to the capital accounts, as shown by the books, were such as remained after salaries and bonuses to the brothers West and Wiggins had been fixed by “the majority in value of the partners” or, as actually occurred with respect to the special bonus in 1948, by the majority partners with J. A. West and Wiggins. The arrangement here is in substance comparable to those which existed in Scherf v. Commissioner, 161 F. 2d 495, affirming 7 T. C. 346; Stanback v. Robertson, 183 F. 2d 889; Feldman v. Commissioner, 186 F. 2d 87, affirming 14 T. C. 17; and Toor v. ~Westover, 94 F. Supp. 860, affirmed 200 F. 2d 713, and we think that what the courts said in those cases indicates the correct decision in the instant case. See also Batman v. Commissioner, 189 F. 2d 107, affirming a Memorandum Opinion of this Court, and Meier v. Commissioner, 199 F. 2d 392, affirming a Memorandum Opinion of this Court. Claiming that Pleasant W. West, as trustee, was- a partner in com-mendam, under Louisiana law, the petitioners seek to avoid the impact of the above cases and the reasoning therein. Under the Eevised Civil Code of Louisiana,[3] a partnership in commendam is formed by a contract whereby one individual agrees to furnish another or others money or property for use in a business in return for a share in the profits “in the proportion determined by the contract,” his liability for losses and expenses being limited to the amount of money or property furnished. Such a partner is somewhat comparable to a limited or special partner under the laws of other states. See Tatum v. Arcadian Production Corporation, 35 F. Supp. 40. Under Article 2845 of the Louisiana Code, a partnership in commendam must be made in writing and must be recorded; otherwise the partner in com-mendam will be considered as a common partner and will be subject to all responsibilities toward third persons that would attach to any other partner, in the business for which he made his advances. The form and substance of the contract and the requirement with respect to its registry are set forth in Article 2846, and provide that “the contract must express the amount furnished, or to be furnished, by the partner in commendam, the portion of profits he is to receive and of the expenses and losses he is to bear. It must state whether it has been received, and whether in goods, money, or how otherwise * * *. It must be signed by the parties in the presence of one or more witnesses, and shall be recorded in full by the officer authorized to record mortgages in the place where the principal business of the partnership is carried on. If it be a commercial partnership, and consists of several houses or establishments, in different parts of the State, such recording shall be made in each of such places.” Commercial partnerships are defined by Article 2825 of the Louisiana Code, and include such partnerships as are formed “for the purchase of any personal property, and the sale thereof, either in the same state or changed by manufacture.” In their briefs, the parties have devoted considerable space to arguments as to whether the requirements, under Louisiana law, for the setting up of a partnership in commendam were met. The respondent takes the position, first, that the trustee was not a partner in any capacity. With respect to the claim that the trustee was a partner in commendam, he points to the provision in Article 2845 of the Louisiana Code, to the effect that a contract creating such a partnership “must be in writing, and must be recorded,” and to the matter which, under Article 2846, must be specifically set forth in such written contract. Calling attention to the fact that in the instant case no formal written contract containing such matter was ever reduced to writing and signed by the parties, he argues that there could have been no partnership in commendam, since the statutory prerequisites for such a partnership have not been met. Noting that in the case of a commercial partnership, which has several houses or establishments in different parts of the state, the contract must be recorded in each of such places, he observes that in the instant case recording of the contract would have been required in approximately 18 different places, which, however, was not done and could not have been done, there being no such written contract. Arguing to the contrary, it is the contention of the petitioners that the partnership agreement as revised in 1943, preliminary to the setting up of the trusts herein, together with the subsequent formal written assignments to trust, plus the affidavits of consent by the brothers West and Wiggins,[4] satisfied the requirements of Louisiana law both with respect to form and substance of the contract, that Pleasant W. West, as trustee did become a partner in commendam, and that their claim that the income here in question was taxable to him, as trustee, is accordingly established. The respondent also argues that even though a partnership in com-mendam be assumed, the purpose of the grants as testified to by the petitioners, namely, that the mercantile business was a hazardous business and by the grants made they planned to protect the interests of their several children therefrom, could be served only as to that portion of the profits actually paid over to the trustee, the capital interests and a substantial portion of the profits being left in the business and subject to its hazards; but, as previously argued, there having been no written agreement of partnership in commendam, and therefore no recording of such an agreement, the trustee, pursuant to the provisions of Article 2845 of the Louisiana Code, would, if a partner at all, have to be considered a common partner, subject to all the responsibilities toward third persons that would attach to any of the other partners, and not even the profits actually distributed to the trustee would have been removed from the hazards of the partnership business. Whether the legal formalities governing the creation of a partnership in commendam,, under Louisiana law, have been complied with, as the petitioners contend, or have not been complied with, as argued by the respondent, we find it unnecessary to decide. While a partner in commendam, as in the case of a limited partner, does not normally, and possibly may not be permitted to, participate actively in the management of the business and the absence of such participation is not, of itself, a bar to the allowance of a claim of partnership, neither does the fact that the alleged partnership is denominated a limited partnership or a partnership in commendam., where the claim, as here, is based on capital participation alone, require the allowance of the partnership claim. In short, there is no more magic in the terms “limited partnership” or “partnership in commendam” than in the term “partnership” standing alone. In either instance, there must be substance and reality in the arrangement. Stanback v. Robertson, supra, and Toor v. Westover, supra. The parties “in good faith and acting with a business purpose” must have intended that Pleasant W. West, as trustee, should join as a partner, whether limited, in commendam, or general, “in the present conduct of the enterprise,” and whether the parties really intended that Pleasant W. West should join with them as a partner in the carrying on of the mercantile business of West Brothers, “is a question of fact,” to be determined from the evidence in the case. Commissioner v. Culbertson, 337 U. S. 733. And while the claim of partnership does not automatically fail where the claim rests solely on the venturing of capital donated between members of a family, such situations do invite careful scrutiny to determine whether the parties “really and truly” intended to join together as partners in the conduct of the particular business. “Mere legal title to capital acquired by gift is alone insufficient.” Feldman v. Commissioner, supra, at page 91. For the purposes here, such changes as occurred were superficial. West Brothers, its assets and its business, were not changed. There was no intention that Pleasant W. West, trustee, should have or exercise rights of management or control over the capital interests, legal title to which were conveyed, or purportedly conveyed, to him. In so far as the partnership, its operations, and its profits were concerned, the trustee’s only participation was that of receiving so much of the profits as the brothers West and Wiggins should decide to distribute and pay over to him. The evidence convinces us that nothing more was intended. By the formalities indulged in, the petitioners merely provided themselves with a new backdrop for the distribution of the profits which they themselves realized from the operations of West Brothers, in such manner and at such times as they desired, just as they were at liberty to do before. From the evidence, we have concluded and found as a fact that it was not intended that in the years here involved Pleasant W. West, trustee, should, in good faith and acting with a business purpose,[5] join as a partner with the brothers West and Wiggins in the present conduct of the business of West Brothers and he did not participate as a partner in the present conduct of the business. “The dominant purpose of the revenue laws is the taxation of income to those who earn or otherwise create the right to receive it and enjoy the benefit of it when paid.” Helvering v. Horst, 311 U. S. 112, 119. In Theodore D. Stern, 15 T. C. 521, and Edward D. Sultan, 18 T. C. 715, promulgated July 3, 1952, we concluded and found that the general partners did intend to join as partners with the trustees in the present conduct of the enterprise. In the Sultan case, however, and after pointing out that “The Supreme Court has advised that family-partnership cases are essentially factual,” we said that “As such, previously decided cases are not particularly helpful.” There, as here, we found our guide in the pronouncements of the Supreme Court, at page 741 of its opinion in Commissioner v. Culbertson, supra, to the effect that the question of whether a “family partnership is real for income-tax purposes depends upon ‘whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both. And their intention in this respect is a question of fact * * ” While there are some points of similarity between the Stern and Sultan cases on the one hand and the instant case on the other, there are likewise points of dissimilarity, and, after seeing and hearing the witnesses in the instant cases and after reviewing and considering their testimony and other evidence of record, we have found that the intention to join with the trustee as a partner in the present conduct of the enterprise, which was found to exist in the Stern and Sultan cases, was lacking here. See and compare Koppelman v. Commissioner, 199 F. 2d 955, and Sall v. Smith, an unreported case. We conclude and hold that the respondent did not err in determining that Pleasant W. West, as trustee, was not a partner in West Brothers during the taxable years involved. While other issues were raised by the petitioners in their pleadings, only one issue was submitted for decision. We will regard the other issues as having been abandoned. Reviewed by the Court. Decisions will be entered under Rule 50. Art. 2839. Partnership in Commendam is formed by a contract, by which one person or partnership agrees to furnish another person or partnership a certain amount, either in property or money, to be employed by the person or partnership to whom it is furnished, in his or their own name or firm, on condition of receiving a share in the profits, in the proportion determined by the contract, and of being liable to losses and expenses to the amount furnished and no more. Art. 2841. Profits and Losses. The proportion of profits to be received by the partner in commendam, may be regulated by the covenant of the parties, as may also, with respect to each other, the proportion of losses and expenses to be borne by each of the partners; but, as respects third persons, the whole sum furnished, or agreed to be furnished by such partner, is liable for the debts of the partnership. * * * * « • • Art. 2S45. Writing and Recording of Articles. Partnership in commendam must be made in writing, and must be recorded in the manner hereinafter directed, or otherwise the partner in commendam will be considered as a common partner in the concern, and will be subject to all the responsibilities toward third persons that would attach to any of the other partners, in the business for which he made his advance. ******* Art. 2846. Form, Contents and Registry of Articles. — The contract must express the amount furnished, or agreed to be furnished, by the partner in commendam, the proportion of profits he is to receive and of the expenses and losses he is to bear. It must state whether it has been received, and whether in goods, money, or how otherwise; and if not received, it must contain a stipulation to pay or deliver it. It must be signed by the parties in the presence of one or more witnesses, and shall be recorded in full by the officer authorized to record mortgages in the place where the principal business of the partnership is carried on. If it be a commercial partnership, and consists of several houses or establishments, in different parts of the State, such recording shall be made in- each of such places. Whether or not the trust Instruments and affidavits of consent were recorded in all places where stores were located, the record does show that they were recorded at DeRidder. On cross-examination, W. D. West testified that he didn’t “know if there was any” business purpose served by the arrangement involved herein.