T. M. STANBACK, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 51748–51751.   Filed October 8, 1956.

*J. Gilmer Korner, Jr., Esq., H. Gardner Hudson, Esq., Robert C. Vaughn, Esq.,* and *Jules G. Korner, III, Esq.,* for the petitioners.
*Ralph V. Bradbury, Jr., Esq.,* for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: T. M. Stanback and Ada M. Stanback, Docket No. 51749; Fred J. Stanback, Docket No. 51750; Fred J. Stanback and Elizabeth C. Stanback, Docket No. 51751.

1

4

OPINION.

FISHER, *Judge:* The first question which we must answer is whether either party is collaterally estopped from here litigating the issue of the validity for Federal income tax purposes of the Stanbacks' family partnership for the years 1943–1949 insofar as it concerns the trusts as partners. The question arises in unusual circumstances. Petitioners urge that a prior decision of this Court (*Wachovia Bank & Trust Co.*, Tax Court Memorandum, Docket Nos. 1899–1902, filed June 22, 1944) represents a previous consideration of the precise issue here before us and that such decision in favor of the petitioners estops the respondent from here and now asserting the invalidity of the family partnership in the years before us. Respondent, on the other hand, urges that the decision in *Stanback* v. *Robertson* (M. D., N. C., 1949), affd. (C. A. 4, 1950) 183 F. 2d 889, certiorari denied 340 U. S. 904, holding that for the year 1941 the Stanbacks' family partnership was not valid for Federal tax purposes (insofar as it included the

trustees as partners) collaterally estops the petitioners from here asserting the validity of such partnership for those later years before us.

The issue presented in the earlier Tax Court proceeding was whether the Stanback brothers as grantors of the several family trusts were taxable on the income of such trusts for the years 1938 and 1939. We held that they were not, stating:

we again are called upon to apply what is familiarly known as the doctrine of *Helvering* v. *Clifford*, 309 U. S. 331. * * *

\* \* \* \* \* \* \*

The *Clifford* case has become a prolific source of litigation, as is evidenced by the many cases in which the application of its rationale has been sought and contested. Efforts to extend the doctrine to less compelling situations have not met with uniform success. The retention of some degree of control by the grantor of a family trust does not require that the trust income necessarily be considered, for tax purposes, that of the grantor. * * * The *Clifford* doctrine merely demands that in such instances special scrutiny be given the terms of the trusts and all the circumstances attendant upon its creation and operation "lest what is in reality but one economic unit be multiplied by devices which, though valid under State law, are not conclusive insofar as section 22 (a) is concerned." * * *

* * * We can conclude only that the application of the *Clifford* doctrine is not called for by reason of the terms of the trusts involved here. * * *

* * * Respondent, however, argues that the *Clifford* doctrine should be applied because of the petitioners' control of the Stanback Company, partnership interests which constituted the principal asset of the trusts and the sole source of the income with which we are here concerned. * * *

\* \* \* \* \* \* \*

the argument is premised on *complete* and *absolute* control over the income and assets of the partnership in the hands of petitioners. But the facts do not warrant a finding that they had such control. Petitioners were simply the managing partners in a limited partnership. As such they had the powers and duties commonly appertaining thereto. They operated the business, directed policy, made determinations respecting the need for reserves, and, by reason of such powers, to an extent controlled the amounts distributed to the limited partners each year. *However, the existence of these powers did not give them the very substantial control required to invoke the application of the Clifford doctrine.* [Emphasis supplied.]

\* \* \* \* \* \* \*

We conclude and hold that petitioners in Docket Nos. 1901 and 1902 are not taxable on the income of the trusts respectively created by them by reason of section 22 (a) of the Revenue Act of 1938 and the Internal Revenue Code.

Respondent's further contention in that case, based on application of section 167 (a), was also rejected.

As here, petitioners, at the time of the District Court proceeding in respect of the taxable year 1941, advanced the contention that such holding of the Tax Court estopped the respondent from then trying the family partnership issue. The District Court concluded that the prior Tax Court decision did not collaterally estop the respondent from challenging the validity of the partnership, and on appeal the

Court of Appeals for the Fourth Circuit affirming such ruling. After reviewing the principles of collateral estoppel and indicating the precise nature of the question presented previously to the Tax Court, which question was not one of the validity of the family partnership but of the validity of the family trusts, the Court of Appeals stated (183 F. 2d, at p. 894) :

Under the Clifford doctrine, control and the duration of a trust are the important factors in determining to whom income is taxable. Since the decision of the Tax Court in the Stanback cases, however, the Supreme Court has laid down the rule that the validity of a family partnership, for tax purposes, depends upon the bona fide intent of the partners to join together in the conduct of the partnership business. Control is now only one of the many factors which must be considered in making this determination. Commissioner v. Culbertson, 337 U. S. 733, 69 S. Ct. 1210, 93 L. Ed. 1659; Lusthaus v. Commissioner, 327 U. S. 293, 66 S. Ct. 539, 90 L. Ed. 679; Commissioner v. Tower, 327 U. S. 280, 66 S. Ct. 532, 90 L. Ed. 670, 164 A. L. R. 1135. Mr. Justice Douglas in the Clifford case, supra, did employ the phrase "bundle of rights" but it is evident that he used these words solely in connection with the question of control. 309 U. S. at page 337, 60 S. Ct. at page 557, 84 L. Ed. 788.

In the cases before the Tax Court upon which appellants rely, the facts were substantially the same as in the present case and partnership income was involved in both instances; but it is apparent from the Tax Court's opinion that no question was raised as to the validity of the partnership for income tax purposes. *The Tax Court in the Stanback cases was concerned only* (as was the Supreme Court in the Clifford case) *with the question of the allocation of income for tax purposes and never commented on the question of the validity of the partnership for tax purposes, the fundamental issue in the case now before us.* As we have already pointed out, *collateral estoppel can be invoked only where the same issue has actually been previously litigated. Here the precise issue before us has not been previously adjudicated* and, even if it had been, the law applicable to the situation has been altered by supervening decisions of the Supreme Court. [Emphasis supplied.]

It is evident, however, that while the Court of Appeals did not consider the issue previously before the Tax Court to be the same as that then being presented to the District Court (with which view we agree, independently of the view of the Court of Appeals), the precise question now before us regarding the effect by way of collateral estoppel of the earlier decision of this Court is the same as that presented to the District Court and the Court of Appeals in the earlier litigation over the validity of the family partnership for 1941. Since the issue raised there by petitioners is the same as that presented here, and since the circumstances in such respects as are relevant to consideration of such contention and the law applicable thereto is the same in every detail, the doctrine of collateral estoppel is here clearly applicable, and precludes petitioner from again raising such question or contention.

We think it is clear from the authorities that the doctrine of collateral estoppel may be applied to the issue of validity of a family

partnership in an appropriate case. In *Harley Alexander*, 22 T. C. 318 (1954), we held that the taxpayers were barred from relitigating the validity of a family partnership, which, in a prior proceeding involving certain earlier years, had been determined to be invalid. We indicated that the basic facts concerning the formation of the partnership were presented in the earlier proceeding and the issue there disposed of. On appeal, the Court of Appeals for the Fifth Circuit (*Alexander* v. *Commissioner*, (C. A. 5, 1955) 224 F. 2d 788) in reversing (but not on the ground that the doctrine of collateral estoppel could not be applied to a case of a family partnership) expressed the view that certain actions of the parties not before the court in the first proceeding might have a significant bearing on the determination, and therefore held that collateral estoppel did not apply in the particular case. See *Argo* v. *Commissioner*, (C. A. 5, 1945) 150 F. 2d 67.

In *Jones* v. *Trapp*, (C. A. 10, 1950) 186 F. 2d 951, the court held that the judgment on the issue of the validity for tax purposes of the partnership between Trapp and his wife for the year 1940 was conclusive and binding in a later proceeding in respect of the year 1941. In applying the doctrine of collateral estoppel, the court stated (pp. 953–54) :

> The additional facts relied upon in the instant case as justifying a different result in tax liability for the two years, consist of letters written by the taxpayer to a bank in 1911 in connection with his application for credit, and Mrs. Trapp's testimony concerning their business relationship through the years. One of the letters to the bank recited that the Trapps were trying to get into the municipal bond business; that Mrs. Trapp was interested in the business, and was furnishing her own separate collateral as security for the proposed loan with which to engage in business. *But these facts are historical and were available in the former trial.* "No new facts were tendered in this case which did not exist and were not available for production in the former case. The applicable and controlling facts remain the same—*they are static, immutable, and therefore precisely identical for the purposes of estoppel.*" * * * [Emphasis supplied.]

See also *Lynch* v. *Commissioner*, (C. A. 7, 1954) 216 F. 2d 574.

It is apparent from the foregoing cases that the doctrine of collateral estoppel may be applied in tax cases involving the issue of validity of a family partnership, but that application of such doctrine is subject to limitations which best serve the ends of justice and do not tend to perpetuate a decision which has not taken account of significant changes of fact or law. Thus, the facts and the evidence thereof material to the consideration of the validity of the partnership must in all respects be substantially the same in the later proceeding as in the prior one. If there is any significant change which may reasonably be calculated to alter the situation (but not merely additional or somewhat different evidence of historically past events

and actions which took place prior to the first hearing and are static in character) then the first decision will not constitute a bar to litigating the issue in the later year(s).

With these principles and limitations in mind, we proceed to examine petitioners' specific arguments against here applying the bar of collateral estoppel. The sense of petitioners' main argument against the conclusive applicability to the present proceeding of the decision in *Stanback* v. *Robertson* is not that the issue there presented was not the same as that here before us, except for the different tax years involved, or that there have been any changes during the intervening years in material facts pertinent to such issue (which is petitioners' second point and is discussed *infra*), but is that the decision in *Commissioner* v. *Culbertson*, 337 U. S. 733 (1949) was not properly interpreted and applied in *Stanback* v. *Robertson*. Petitioners point to various portions of the trial judge's charge to the jury and to certain of the questions directed by the trial judge to various witnesses during the course of the hearing, and urge that they clearly indicate the application of what petitioners would consider the "dead" hand of *Tower* and *Lusthaus* and not the properly applicable law of family partnership as clarified in *Culbertson*. Petitioners suggest that *Culbertson* was not fully understood so shortly after its promulgation and that the legal climate has since changed as a consequence of such greater understanding, evidenced by various cases, Mimeograph 6767, and the family partnership provisions of the Revenue Act of 1951. Petitioners also point to portions of the Court of Appeals decision and argue on brief as follows:

> It is clear from the charge of the District Judge, and from the opinion of the Court of Appeals, that the rule of *Culbertson* was not being followed but that the tests which had been erroneously attributed to *Tower* and *Lusthaus* were being followed. It is clear that while paying lip service to *Culbertson*, both courts were applying the very tests which *Culbertson* had condemned. Similar to another historically famous decision, the hand was the hand of *Culbertson* but the voice was the disguised voice of *Tower* and *Lusthaus*.
>
> \* \* \* \* \* \* \*
>
> The Judge's charge discloses the tests upon which the jury were instructed and practically directed to make the decision which it made.
>
> Some of those erroneous tests were predicated upon a palpable misconception or misunderstanding of Culbertson; some were predicated upon assumption of facts which did not exist (such as that the wives and children of the Stanbacks were alleged to be partners); some were predicated upon assumptions which were wholly contrary to the determined facts (such as lack of ownership in the limited partners of a portion of partnership income which the Tax Court had specifically held did belong to the trusts); some were predicated upon issues which were totally agsent and which had application only in cases involving gifts of anticipatory income (as in the *Horst* case), having no relation to the case being tried; while some had application only in so-called "*Clifford* cases," or in "*Stuart* cases" involving sec. 167. In essence the Court's charge was a

potpourri of elements thoroughly mixed, jumbled and confused. They included every so called "test" for determining taxability condemned by the *Culbertson* case.

Without further detailing the specific criticisms by the petitioners of the trial judge's instructions or the application of the *Culbertson* decision to the facts by either the trial judge or the judges of the Court of Appeals in affirming the lower court decision, we think that we are here bound by what was there done. We think it appropriate to comment, however, that we do not find that the interpretation and application of the law as embodied in the *Culbertson* decision was erroneously applied in *Stanback* v. *Robertson* as urged by the petitioners.[2] The Court of Appeals faced squarely the question of whether the *Culbertson* decision was properly applied by the trial court to the facts then at hand, and held that it had been. Petition for certiorari was thereafter denied, 340 U. S. 904 (1951).

As we understand the *Culbertson* case, the substantive question is whether or not the partnership among the petitioners and the several trusts established by petitioners for the benefit of their respective wives and children constituted a valid partnership during the years in question for Federal income tax purposes. The reality of the "family partnership" for tax purposes depends on "whether the partners really and truly intended to join together for the purpose of carrying on the business and sharing in the profits and losses or both." *Commissioner* v. *Tower*, 327 U. S. 280 (1946). The issue is one of fact and the intention of the parties is to be gleaned in each case from a consideration of all of the particular circumstances involved, without placing special emphasis on any given factor(s). As the Supreme Court stated in *Commissioner* v. *Culbertson, supra*:

> The question is * * * whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—*the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise.* [Emphasis supplied.]

We do not think that these principles were misconceived or misconstrued by either the trial judge or the Court of Appeals in *Stanback* v. *Robertson.* Nor can we say that time has here altered the legal climate. *Culbertson* itself was but a further explication of the basic underlying principles enunciated in *Tower* and *Lusthaus* and the prin-

---

[2] It should be understood, of course, that when we say that in our judgment the *Culbertson* principles were correctly applied in the earlier case, we intimate no view as to whether or not we agree with the verdict of the jury upon the facts, but only express the view that the trial court and the Court of Appeals correctly applied such principles in exercising their appropriate functions. Whether upon the record in the prior proceeding we would have found such intent or the absence thereof is not before us and we do not express any view with respect thereto.

ciples are the same now as they were then. The Supreme Court in *Culbertson* attempted to lead back to those principles such courts as had misconstrued *Tower* and *Lusthaus* as having laid down a series of objective tests. The Court of Appeals in *Stanback* v. *Robertson*, in its opinion affirming the District Court, did, as it stated, apply the *Culbertson* test and in our opinion properly applied its principles. In so doing, its determination that the District Court properly applied the *Culbertson* rule acts to bar the petitioner from here raising a contention that such rule was not there properly applied. Furthermore, upon close examination of the charge to the jury in *Stanback* v. *Robertson*, we are of the opinion that the trial judge performed well and fairly a very difficult task in couching his instructions to convey to the jury the necessary elements of the law in an intricate and subtle area of tax matters. Such instructions fairly reflect the essence of what we understand to be the rule which the Supreme Court has laid down for determining the validity of family partnerships. We point out in the margin below some of the trial judge's statements to indicate clearly that the essence of these principles was carefully stated, particularly so when they are read in the context of the judge's whole instructions [3] and not merely piecemeal as pointed to by the petitioners.

---

[3] In the outset, I deem it my duty to say to you that under the law as I understand it by the United States Supreme Court, it does not necessarily arise that a partnership which is recognized as valid under the law of the State where it is formed, is by virtue of that fact alone necessarily a partnership within the meaning of the federal income tax laws.

That may be somewhat difficult to understand, but the issue which is submitted to you is calling upon you for a decision on a matter of fact, whether from your findings that this so-called partnership in the Stanback Company, in which the trustees for the wives and children of the plaintiffs were bona fide partners within the meaning of the federal income tax laws.

* * * it is the duty of the tryer of the facts, and you happen to be the tryer of the facts, you are a jury, to determine whether it is a mere partnership in form as distinguished from substance; whether it is a partnership in reality as distinguished from mere appearance; whether it is a partnership created bona fide for the purpose of a partnership, or whether it is a mere sham or scheme prepared to escape the payment of income taxes or to reduce them.

I can see, gentlemen, that it is not an easy task for you or anybody else charged with the responsibility of finding facts to apply that kind of test, but it seems, the best I can understand, that the Supreme Court of the United States now says that the real test of whether an arrangement is a bona fide partnership is one which the jury must determine on the basis of the intent with which the parties enter into it, and that is whether they enter into it with the intent to form a bona fide partnership for the purpose of continuing a bona fide partnership business, or whether they merely employed the external appearance for a partnership arrangement, for the primary and chief purpose of trying to split the income of the partnership, so as to reduce taxes, and so, when it becomes a matter of intent, it is the duty of the jury to consider every fact which throws any light on the circumstances, in order to determine what the intent was.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

When the existence of an alleged partnership arrangement is challenged by outsiders, as the Commissioner of Internal Revenue challenged the existence of this partnership for the calendar year 1941, the question arises whether the partners really and truly intended to join together with the purpose of carrying on business and sharing in the profits or losses, or both. And their intention in this respect is a question of fact, to be determined from the testimony, disclosed by their agreements, considered as a whole, and by their conduct in the execution of their agreements.

Petitioners further contend that the Court of Appeals disregarded completely the prior decision of this Court to the effect that the family trusts were valid, and argue that collateral estoppel may not therefore be applied here. It is true that that court did not deal with the prior determination of this Court since the record in such prior proceeding was not there before it. But our prior determination only went to the validity of the trusts for purposes of the so-called *Clifford* doctrine. The trusts are plainly valid under State law, and they are valid for Federal income tax purposes insofar as the *Clifford* doctrine is concerned. But the validity of the trusts for such purposes does not resolve the issue of validity of the family partnership. *Control* over and *duration* of a trust are the important factors in determining to whom the income is to be taxed under the *Clifford* doctrine, but it is the relationship of the partners, one to the other, in terms of the carrying on of a valid partnership business that is critical in determining the validity of a family partnership, even though the partners are also related as grantors of the trusts which it is claimed are limited partners. Control by the partners, *qua* partners, over the partnership income which under the agreement should flow to the trusts as limited partners bears on the validity of the partnership, but absence of control *qua* grantors over the trusts and thus the income due the trusts has nothing to do with the validity of the partnership. Likewise, as we indicated in *Robert P. Scherer*, 3 T. C. 776 (1944), control over the flow of partnership income to the trusts does not affect the validity of ownership of such income by the trusts once in the hands of the trusts. See also *Theodore D. Stern*, 15 T. C. 521 (1950); *Edward D. Sultan*, 18 T. C. 715 (1952).

A partnership is created when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and where there is community of interest in the profits and losses. A partnership is, in other words, an organization for the production of income to which each partner contributes one or both of the ingredients of income—capital or services.

In determining the question of fact upon this issue, whether Thomas M. Stanback, Fred J. Stanback, and the six trusts really and truly intended to join together for the purpose of carrying on business as a partnership in good faith, you should take into consideration all the facts and circumstances shown by the evidence and all reasonable inference that may be drawn from the evidence. I will point out to you some of the things which you may consider in determining what the parties really and truly intended, but no single one of the points I mention will decide the issue. Rather you should consider all the facts and circumstances and decide from the greater weight of the evidence whether the parties really and truly intended to join together in good faith for the purpose of carrying on the business as a partnership, whether the Court has pointed out those facts or not.

* * * * * * *

The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard, but whether, considering all facts—the agreement, the conduct of the parties in the execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of the income and the purposes for which it is used, and any other facts throwing light on their true intent— the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise.

We disagree with petitioners' view that Mimeograph 6767, *supra*, sets up standards more liberal than those expounded in the *Culbertson* decision, and different from those applied by the trial judge and the Court of Appeals in *Stanback* v. *Robertson*. The Mimeograph specifically indicates that it is only a statement of what the respondent conceives to be the applicable principles derived from the *Culbertson* decision, and when such expression of view is read as a whole in context, we think it has adequately and fairly stated such principles.[4] The Mimeograph clearly indicates that the validity of the family partnership depends on the intent of the parties forming the partnership and that such intent is to be gleaned in each case from the particular circumstances there involved. Such intent was determined by the jury in the District Court and the judgment there was affirmed by the Court of Appeals. We not only cannot here say that it was wrong, but on the contrary are of the opinion that there was no misinterpretation or misconstruction by those courts of the applicable *Culbertson* principles. In all events, as indicated above, we consider ourselves bound by the decision of the Court of Appeals to the effect that the *Culbertson* doctrine was correctly applied in *Stanback* v. *Robertson*, and petitioners are now collaterally estopped from raising such question.

Petitioners' next point is to the effect that the evidentiary facts here differ significantly from those before the trial court in *Stanback* v. *Robertson*. They argue that since the record in the first Tax Court proceeding was not a part of the evidence admitted in the District Court trial, whereas it is here in evidence, "[i]f it had been so included the probabilities are that the decision in that case would have been different." We do not agree. A careful comparison of the record of the prior Tax Court proceeding with that of the District Court proceeding reveals that all of the pertinent facts regarding the formation of the partnership appear and were introduced in the latter record in virtually the same manner and by testimony of mostly the same individuals as previously in the record before the Tax Court. We have not found anything favorable to petitioners which is a part of the record in the prior Tax Court proceeding, directed to the *Clifford* trust issue, which is not also independently a part of the separate record of the District Court proceeding. But even if this were not true, we could not accept petitioners' argument, since the issue before the Tax Court was different from that before the District

---

[4] The following is an excerpt from Mimeograph 6767:

It is emphasized that this mimeograph does not attempt either to provide a ready formula for the solution of family partnership cases or to state comprehensively all of the principles that are applicable in such cases. The matters here dealt with are accordingly to be understood in their relationship to the total fact picture in the particular case and to the basic principles of the Culbertson opinion set out above, which will not be further elaborated.

Court and there was consequently no basis in the latter proceeding for admitting as evidence the transcript of the prior proceeding over the objection of the then collector of internal revenue, defendant.

Petitioners next urge that the fact the partnership was terminated on December 31, 1949, in accordance with the partnership agreement and that in the reorganized partnership effected on January 2, 1950, each alleged partner, general and limited, received a fair share under the new agreement, was not before the District Court (the event had not then occurred) and that such circumstance of which evidence has been produced in this proceeding acts to lift the bar of collateral estoppel. We cannot agree. Such fact is not in a real sense new, nor does it change the complexion or significance of the previously pertinent facts. The event occurred in accordance with the terms of the agreement, which was before the court in the prior proceeding. That it ultimately so came to pass changes nothing. The events pertinent to determining the intent of the parties to form and carry on a partnership are generally historical and were clearly so in the instant case. Such events were past by the time the technical (under State law) partnership was actually terminated. The termination of the partnership, however, was not an event or change in the activities of the parties in years subsequent to the year of the prior determination which required reexamination of the basic question. The action, as above indicated, was taken in conformity with the terms of the agreement which was before the court in the earlier case. The ultimate right to share in the distribution upon termination in accordance with the agreement was always a part of the picture and not only so upon actual termination. Therefore, we do not think such fact is new, nor does it cause the removal of the bar of collateral estoppel to relitigation of the basic issue.

Petitioners next contend that the evidence submitted at the time of this hearing regarding the value of the capital contributions and the value of the services of the general partners is such a change in facts as will prevent application of the doctrine of collateral estoppel. Again we must disagree with petitioners' view. We do not believe that such evidence goes to the issue of validity of the family partnership at all, but as presented here goes only to the petitioners' alternative contention discussed *infra* regarding reallocation of the income. Moreover, it is our view that such facts are in reality historical and static and not new. The changing relations of the personal services rendered by the general partners does not bear on the intent to form a partnership or in any way tend to effect a subsequent formation of a valid partnership. We do not think, therefore, that such evidence can be considered as significant in relation to the primary issue and as evidentiary facts new to this proceeding.

We conclude that since the question before us goes to the validity of the family partnership, which issue depends on the circumstances leading up to and surrounding the formation of the partnership, all previously before the District Court in the prior proceeding wherein the issue was the same as that here before us, and since there has been no showing of a change in the relationship of the parties subsequent to such prior determination, the petitioners are here barred from re-litigating the family partnership question. *Commissioner* v. *Sunnen*, 333 U. S. 591 (1948); *Tait* v. *Western Maryland Co.*, 289 U. S. 620 (1933); *Harley Alexander, supra; Jones* v. *Trapp, supra.*[5]

Petitioners contend that even if the validity of the family partnership is not sustained, we must nevertheless make an allocation of the business income among the Stanback brothers and the several trusts in accordance with their proportionate investments after an allowance for the reasonable value of the services rendered to the partnership by themselves. We do not accept this view.

Petitioners rely, *inter alia*, for authority for this technique of calculation on Mimeograph 6767 (the pertinent portion of which is set forth in the margin below) [6] and also upon section 191 of the Internal Revenue Code of 1939, added by the Revenue Act of 1951, which petitioners urge to be declaratory of preexisting law.

Petitioners, however, misconceive the purpose of this method of allocation. The Mimeograph provision and section 191 of the Code deal only with cases in which the family partnership is recognized as valid, but where the allocation of income in the partnership agreement

---

[5] On reply brief petitioners urge that "[i]n certain of the years here in suit there are parties who were not parties" in *Stanback* v. *Robertson,* "viz. the wives of T. M. and Fred Stanback," and, therefore, that the "*Robertson* case cannot estop them, as they were not parties to the prior action." We point out that petitioners do not raise a like point when urging that the *Wachovia* decision should, be here applied to bar the respondent, even though the point would be equally applicable thereto. In any case, the wives are here petitioners only by reason of having filed joint returns with their husbands for the years 1948 and 1949, and for the reasons outlined in a Memorandum Opinion of this Court, affirmed per curiam by the Third Circuit in *Clarke* v. *Commissioner,* (C. A. 3, 1947) 158 F. 2d 800, there is no merit to petitioners' contention.

[6] 7. *Reasonableness of Agreed Division of Profits—Allocation.*—A wholly unreasonable agreement as to the sharing of partnership income may be evidence of the absence of *bona fide* partnership intent and, along with other pertinent evidence, may invalidate the partnership for income tax purposes. Even if a partnership is entitled to recognition for income tax purposes under the foregoing and other applicable principles, however, the agreed division of profits should be scrutinized to ascertain whether it involves the donative deflection of income attributable to personal services or the division of other income in disproportion to capital interests of which the recognized partners are accepted as the real owners. If the agreed division of profits does not reasonably accord with ordinary business arrangements of parties dealing at arm's length, considering the respective contributions by the recognized partners of services, skill, credit, and capital of which they are the real owners, it may be appropriate to make a fair allocation, to divide the income in shares to which persons dealing with each other at arm's length would reasonably agree under the particular circumstances, taking into account the relative proportions of the income attributable to services and to capital and all such contributions of the several recognized partners. The allocation of adequate, reasonable salaries to active partners before any other division of profits will frequently provide adequate compensation for their contributions of skill and services, and the adequacy and reasonableness of any such salaries allowed by the agreement of the parties should always be considered.

does not adequately allow for the value of services rendered to the partnership by any of the partners. A reasonable allowance for the value of the services of the active partners is required if the basic principle that income be taxed to the earner thereof is to be satisfied. Where the partnership is not recognized as to the trusts, however, as here, the problem is not to assure the allowance of a reasonable amount for services rendered, but only to determine (see discussion *infra*) whether, and in what amounts, the partnership may be entitled to a deduction for payments made to the trusts for the use of capital of the trusts in the partnership business. The technique for so doing urged by petitioners is inappropriate because it has the effect of allowing the unrecognized partners to share in the business profits, over and above the allowance for salaries, in proportion to the capital contributed just as though they were in fact partners. If this approach were to be followed, it would be fruitless to consider whether a partnership is valid and to be recognized for Federal tax purposes. We think the proper rule for this case is that some fair return be allowed for payments made by the partnership for the use of the capital of the several trusts in the Stanback business by way of an annual deduction by the partnership for each of the years here in issue.

The underlying principles here applicable are summarized in *Wofford* v. *Commissioner*, (C. A. 5, 1953) 207 F. 2d 749, in which the court said (p. 753) :

These facts plus the undisputed fact that the trust contributed to the venture the use of its one-third interest, while, in view of the Tax Court holding, not sufficient to establish a partnership, were ample as a basis for a finding as to the value in terms of income of the contribution the trust made. There was, therefore, evidence upon which the Tax Court could have allotted to the trust the interest in the income which the parties had agreed to give it. Whether this should be called rent, or the value of the use, it was certainly the measure of what the parties had agreed would entitle it to one-third of the net income.

This is not to say that the Tax Court was compelled to accept their agreement, as to the value of the use or rental value if, under all the facts of record, the agreed amount was excessive, Cf. Greenspun v. Commissioner, supra. It is to say, though, that upon the rejection by the Tax Court of the claim of partnership, it was incumbent upon it to determine the value to the business of the use of the one-third interest owned by the trust and upon this basis reallocate the income attributed to petitioner by giving full effect to that determination.

Cf. *David L. Jennings*, 10 T. C. 505 (1948), and cases therein cited.

We next consider what is the actual capital of the trusts used in the Stanback business for the years in question and what is a reasonable amount to be paid for the use thereof. The evidence does not support a precise solution, and we must exercise our best judgment, keeping in mind the principles of *Cohan* v. *Commissioner*, (C. A. 2, 1930) 39 F. 2d 540.

We have found as a fact that during the years here in question the total capital of the several trusts in the Stanback business was in the amount of $187,194.48, and that a reasonable amount to be paid for the use of such capital would be 10 per cent annually. Total amounts in excess of 10 per cent of such total capital were paid or credited to the trusts by the partnership in each of the years in question, and we hold, in the light of the foregoing discussion, that the partnership is entitled to a resultant deduction for each of the years in question of $18,719.45. In arriving at $187,194.48 as the total amount of the capital of the trusts, we have accepted $90,000 as a proper valuation of the 24 per cent interest in the business given the trusts by the Stanback brothers in 1937, as determined by the Commissioner for gift tax purposes and on which basis the petitioners herein made settlement of gift tax deficiencies rather than the lesser amount of $30,000 appearing on the Stanback books. Likewise, the value of the additional 12 per cent interest transferred to the trusts in 1938 is considered to be $54,000 as the Commissioner determined for gift tax purposes and on which basis settlement of the petitioners' gift tax deficiencies was made, rather than the $15,000 assigned to such interest by petitioners on the books of the enterprise. In addition to such capital, transfers were effected, prior to the period here in question, from the drawing accounts of the several trusts to the surplus "capital" account in the total amount of $43,194.48 and represent an additional amount of capital of the trusts used in the business which must be included in the basis used for determining the amount of the allowable deduction.

In selecting the proper rate of return, we have gleaned such comprehension of the nature of the Stanback business as we could from the record before us. We recognize that the proprietary medicine business is a risk business which might be seriously affected by State or Federal regulation in an area where regulation is not uncommon; and also that demand for the Stanback product depends almost wholly on successful promotion, which in turn depends largely on extensive and costly advertising. Moreover, Stanback was not a diversified operation. It manufactured and distributed but a single product. It maintained no research facilities. All of these factors tend to require a return in excess of the normal return on capital expected in the open market from a business enterprise entailing only an average amount of risk. With these factors in mind, but without emphasizing any particular one of them, and mainly on the basis of our judgment based on consideration of the entire record, we hold, in accordance with the principle of *Cohan* v. *Commmissioner*, *supra*, that a reasonable rate of return in the particular circumstances of this case is 10 per cent.

We have noted, of course, that petitioners introduced evidence in relation to the going concern value of the enterprise during the years 1942 through 1949, largely based upon capitalization of earnings. We think the year-by-year, over-all valuation of the business by petitioners' valuation expert was excessive. We need not, however, determine our own valuation, because it has already been made clear that such an approach is not a basis for valuation of the capital of the trusts used in the business or the determination of a reasonable allowance for the use thereof. Such value cannot be increased by the capitalization of the very earnings in which the trusts are not entitled to share because they are not partners.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*