## FELDMAN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6164.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 16, 1950.

Decided Dec. 20, 1950.

Eugene M. Feinblatt, Baltimore, Md. (Simon E. Sobeloff, Baltimore, Md., on brief) for petitioner.

Harry Baum, Special Asst. to the Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., and Ellis N. Slack, Sp. Asst. to the Atty. Gen., on brief), for respondent.

Before PARKER, Chief Judge and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from a decision of the Tax Court of the United States sustaining a deficiency assessment against the taxpayer on income taxes alleged to be due for the years 1944, 1945 and 1946 in the respective amounts of $16,085.07, $48,733.87 and $27,630.39, the total being $92,449.33 This deficiency was based on the Commissioner's refusal to recognize the Estate of Samuel Feldman, a trust, as a partner in the firm of Brooks Clothes or as a trust taxable independently of its grantor. The entire income of the trust was taxed to taxpayer, the grantor of the trust, partner in Brooks Clothes, and father of Samuel Feldman.

The facts, as stated in taxpayer's brief, are substantially as follows. In 1934 the taxpayer opened a retail clothing business in Norfolk, Virginia. The business became incorporated, and taxpayer and his brothers became corporate officers. Factories were later acquired, and the business expanded into the manufacture and sale on a chain store basis of men's clothing. In 1941 the five Feldman brothers executed a detailed written partnership agreement, continuing the business under the name of Brooks Clothes. The capital of the partnership was $250,000 to which contributions were made in the following proportions: taxpayer—35%, Jack Feldman—20%, Al, Edward and Julius Feldman—15% each.

Each of the partners was to act as a representative of the firm in such specific duties as might be assigned to him, and the agreement further provided that the concurring vote of four partners was necessary to determine whether the profits of the business should be withdrawn or credited to capital. A withdrawing partner was entitled to receive from the partnership the book value of his interest, in installments. Likewise, the agreement provided that upon the death of any one of the partners, the partnership should purchase his interest, each of the four surviving partners being obligated to purchase a share proportionate to his own interest.

In 1938 or 1939, taxpayer's son, Samuel, who was then ten years old, started to work at the Baltimore store, wrapping packages, delivering clothes and running errands. He worked regularly on Saturdays, in the evenings and during the summer vacation months. In 1942 Samuel began to take on the duties of a salesman and cashier. Samuel was encouraged by all of the partners to take an active part in the business His education and activities were directed towards that end, and his duties were deliberately varied so that he could learn all phases of the operation of the business.

During the tax years in question, Samuel was aged fifteen, sixteen and seventeen; he was then attending a Baltimore high school. In September, 1946, Samuel left Baltimore to attend the Wharton School of Finance in Philadelphia to study business methods, accounting and marketing. Throughout this entire period Samuel devoted a large portion of his spare time to the business. As he grew older, he progressed to positions of some responsibility, substituting at times for absent store managers, and assisting in the opening and checking on the operation of a new store. During the tax years, taxpayer felt that his son already had a better background for the business than any of the brothers in the firm.

In 1942 taxpayer had proposed that he give to Samuel part of his interest in the business. Since the business was expanding and the partners were interested in taking in members of the younger male generation of the family, and since Samuel had shown such interest and aptitude and because it was thought that he was and would continue to be useful to the business, it was decided by all the partners to take him into the business. Taxpayer was anxious to take advantage of this 1942 agreement since there was no guarantee that his brothers would later accept Samuel. Also, he was aware of the tax advantages which he might gain. The partners would not have accepted as a partner an individual outside of the family.

On July 1, 1942, taxpayer created a trust, with his son Samuel as beneficiary, to which he assigned a 13% interest in the capital of the business. Maurice Feldman, a physician not previously associated with the business, was named trustee by the declaration of trust, and agreed to serve. The declaration of trust specifically authorized the trustee to engage in the business as a partner. No restraints or conditions were placed on the investment of trust funds, and the trustee was free to remain in, or withdraw from, the partnership to the same extent as any other partner. The declaration of trust also provided that profits could be withdrawn from or left in the partnership in the discretion of the trustee,

subject only to those restrictions which were applicable to all of the partners. It was further provided that the trustee should have full power to invest and re-invest the funds of the trust, but all income to the trust was to be added to corpus and no part of the income was to be used for Samuel Feldman's benefit except in the event of taxpayer's death. The declaration stipulated that the trust was to terminate when Samuel reached the age of twenty-one, but in the event of his death prior to the termination of the trust, the trust property was to pass as Samuel might designate by will. Upon failure of designation, the trust property was to pass to Samuel's mother, if living, otherwise to his sister. The declaration of trust was irrevocable and the taxpayer retained neither a reversionary interest nor the right to appoint successor trustees.

On July 1, 1942, the partners and Maurice Feldman, as trustee, executed a supplemental agreement. This provided that Maurice Feldman, as trustee and owner of 13% of the capital of the partnership, was admitted as an additional partner in Brooks Clothes, with all rights and obligations of the other partners except participation in the purchase of a deceased or withdrawing partner's interest. The change was made public to the business world and taxpayer paid a gift tax on the assignment.

Maurice Feldman served as trustee until May, 1944. He was succeeded by Jack Feldman who has continued to serve in that capacity and to act as a partner in his own behalf. During the tax years in question, there were various discussions and some disagreements. All differences, however, were harmoniously resolved. The partners never had occasion to take a vote.

From July 1, 1942, to September 30, 1946, the profits credited to the trust amounted to $168,978.00, of which $152,843.00 was withdrawn. During the tax years the partnership profits credited to the trust amounted to $109,383.00; during these years $132,036.00 was withdrawn. The withdrawals were made by the trustees in the exercise of their own discretion. The balance, after taxes, was invested by

Jack Feldman, trustee, in the exercise of his own discretion. During the tax years, in addition to its 13% interest in the original capital, the trust invested in the business as additions to capital $15,185.00, $15,185.00 and $8,740.00, respectively, out of profits.

In its operations the partnership always purchased goods in large quantities at price concessions and a large inventory was carried. The business was very profitable, and capital was an important factor in its success. On October 1, 1946, the partnership was dissolved and the business was incorporated. Stock in the new corporation was received by the trustee for Samuel Feldman in proportion to the amount allocated to the trust on the partnership books. Taxpayer continued at all times to support his son.

██ It is our opinion that the Tax Court properly applied the test of family partnerships as outlined in Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659, and reached the correct conclusion. The Culbertson case stated that an absolute objective test of contribution of original capital or of managerial or vital services was not established by Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670. And the test was summarized to be, whether, in the light of all the facts and circumstances, "the parties *in good faith and acting with a business purpose* intended to join together in the present conduct of the enterprise." (Italics supplied.) See 337 U.S. at 742, 69 S.Ct. at 1214, 93 L.Ed. 1659. The Culbertson case stated further, however, that whereas such a determination was not "conclusive," a finding that services contributed by a partner were not vital and that he had not participated in management or contributed original capital placed "a heavy burden on the taxpayer to show the bona fide intent of the parties to join together as partners." See 337 U.S. as page 744, 69 S.Ct. at page 1215, 93 L.Ed. 1659.

██ As we read the opinion of the Tax Court in this case, that court found that a contribution had been made neither of original capital nor of managerial or

vital services. And failing to find other indicia of a bona fide business purpose, the Tax Court held the income of the trust taxable to taxpayer. We must affirm this decision because it is not clearly erroneous. Mauldin v. Commissioner, 4 Cir., 155 F.2d 666; Hash v. Commissioner, 4 Cir., 152 F.2d 722, certiorari denied 328 U.S. 838, 66 S.Ct. 1013, 90 L.Ed. 1614.

We think it clear that the participation of the Feldman trust in the partnership was not a bona fide business arrangement for tax purposes, as required by the Culbertson case. The contribution by the trust of managerial or vital services can be immediately discounted. The first trustee-partner, Maurice Feldman, was a physician who had no previous connection with Brooks Clothes. Presumably he had nothing to offer the business, and the contrary was not shown. The second trustee-partner, Jack Feldman, was already a partner in his own right. We have no doubt that the business benefited by virtue of his counsel but his personal interest compelled whatever contribution he made and it would be unreal to suppose that Jack Feldman contributed as trustee-partner anything that he did not contribute as an individual partner.

The services of Samuel Feldman, the cestui, were too unsubstantial to support, for tax purposes, the partnership arrangement. During the tax years he was respectively fifteen, sixteen and seventeen years of age; he was, so to speak, learning the business from the grass roots. The greater part of the services rendered by him were such as any hired employee might well perform. And when, towards the end of this three-year period, Samuel began to assume higher responsibilities such as substituting for a store manager or assisting in the opening of a new store, these activities were so temporary and scattered that they gave little substance to the value of his services. Quite probably Samuel's early training was to accrue substantially to the future benefit of Brooks Clothes but this was a matter for future tax years.

And the trust contributed no original capital. We recognize, as did the Tax Court, that a failure to contribute original

capital is not conclusive even where managerial or vital services are also lacking. But, as previously stated, the want of these elements does place a heavy burden of proof on the taxpayer. This burden has not been met.

The argument centers about the trust's owning and leaving in the business that capital given it by taxpayer, viewed in the light of the fact that capital was the chief factor in the success of Brooks Clothes. We conclude that the trust's ownership of gift capital is not a contribution sufficient to offset the inferences to be drawn from the failure to contribute original capital or vital managerial services.

 Mere legal title to capital acquired by gift is alone insufficient. Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659; Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670; Kohl v. Commissioner, 8 Cir., 170 F.2d 531, certiorari denied 337 U.S. 956, 69 S.Ct. 1528, 93 L.Ed. 1756; Hash v. Commissioner, 4 Cir., 152 F.2d 722. And we agree with the Tax Court that this is the sole indication of a bona fide business purpose. The realities of this situation indicate clearly that the admission of the trust as partner had no effect whatsoever on the partnership except insofar as the distribution of profits on taxpayer's original interest is concerned. Brooks Clothes was a closely-knit family partnership and never was it necessary that a vote be taken among the partners. The admission of the trust as partner, although it may have been motivated in part by a desire to furnish Samuel an incentive, was primarily to spread out the distribution of profits in one branch of the family.

Taxpayer makes reference to what could have been done under the declaration of trust. The trustee-partner could have participated actively and independently as representative of the trust but neither of the trustee-partners did so. The trust could have been withdrawn from the partnership but the participation of the trust was extremely profitable and there was every expectation of its remaining so. And

this was a family partnership, the trustee-partners were members of the family, and the cestui had for years been preparing to go into the partnership business.

It is true that the trust was to terminate when Samuel became twenty-one, or, if he died in the meantime, to pass as he should appoint by will. This, of course, is indicative of Samuel's property interest but we are not as successful as taxpayer in finding here any evidence of bona fide business purpose. We likewise fail to see the logical connection between a business purpose and the withdrawal of some of the profits for investment elsewhere.

The necessary economic substance and reality are here lacking. See Collamer v. Commissioner, 4 Cir., 185 F.2d 146; Ritter v. Commissioner, 4 Cir., 174 F.2d 377; Moore v. Commissioner, 4 Cir., 170 F.2d 191, certiorari denied 337 U.S. 956, 69 S.Ct. 1528, 93 L.Ed. 1756; Economos v. Commissioner, 4 Cir., 167 F.2d 165, certiorari denied 335 U.S. 826, 69 S.Ct. 53, 93 L.Ed. 380. And see, particularly, Stanback v. Robertson, 4 Cir., 183 F.2d 889, with facts quite similar to those in the instant case.

The decision of the Tax Court is affirmed.

Affirmed.