### SCHALLERER v. COMMISSIONER OF INTERNAL REVENUE.

No. 10682.

United States Court of Appeals
Seventh Circuit.

April 1, 1953.

Writ of Certiorari Denied June 15, 1953.

See 73 S.Ct. 1137.

Isaac I. Bender, Chicago, Ill., for petitioner.

Charles S. Lyon, Asst. Atty. Gen., H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack and Hilbert P. Zarky, Sp. Assts. to Atty. Gen., for respondent.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

The Tax Court of the United States redetermined income tax deficiencies against petitioner for the years 1943, 1944, 1945 and 1946, and found such deficiencies in the respective amounts of $20,490.06, $24,252.76, $20,329.86 and $17,275.92. The case is before this court on a petition to review the decision of the Tax Court. A partial stipulation of facts was filed. Some issues were disposed of by oral stipulation during trial in the Tax Court.

During the taxable years, the taxpayer was living with his wife, Anna J. Schallerer, and his only child, Grace E. Schallerer. The taxpayer and his wife were approximately 63 years old and their daughter 36 years old.

In 1920, the taxpayer and William J. Flynn had entered into a partnership engaged in the manufacture of patterns for the iron and steel industry. The business was conducted under the name of Calumet Pattern Works. Both partners performed personal services for the business, and the profits and losses were divided equally. In 1930, they entered into an agreement with the Chicago Title and Trust Company, as trustee. The partnership had insured the life of each partner and designated the trustee as beneficiary. Their agreement provided that on the death of a partner the survivor was entitled to acquire the decedent's interest at book value, except items appearing on the books at cost should be valued at market value. It was further provided that the proceeds of the insurance policy should be paid to the decedent's estate and applied against the purchase price.

William J. Flynn died on March 3, 1943. Within a week taxpayer agreed with Flynn's widow to purchase his share in the partnership assets at an agreed price of $54,915.13 and the conveyance of two vacant lots having a total book value of $3,382.40. The formal agreement, executed on June 15, 1943, provided that the $54,915.13 was to be paid as follows: $3,500 advanced to pay the March 15 installment of personal income tax of decedent; $3,456.09 to pay the June 15 installment; $11,543.91 in cash; $5,000 in United States Treasury notes, and $20,000 in notes to the Chicago Title and Trust Company as trustee for the Flynn estate. The balance was by credit of the $11,415.13 received by the trustee as the proceeds of the insurance policy on Flynn's life.

In payment of the above amounts, taxpayer immediately turned over to Flynn's estate, out of the assets of the dissolved partnership, the following assets: $5,000 in Treasury notes; check of dissolved partnership for $5,758.28; and cash of $3,500 to pay Flynn's March 15, 1943, income tax installment. Taxpayer then obligated the new business, conducted as Calumet Pattern Works, for the amount of $29,241.72.

Taxpayer personally withdrew from the

102

assets of the dissolved partnership the land and building erected in 1940, having a depreciated book value as of March 2, 1943, of $32,082.04.

The balance sheet of the new business conducted as Calumet Pattern Works, as shown by book entries as of March 3, 1943, was as follows:

Assets

| | | |
|---|---:|---:|
| Cash | $38,032.35 | |
| Accounts receivable | 2,240.00 | |
| Notes receivable | 1,362.02 | |
| Inventory | 4,000.10 | |
| U. S. Treasury tax notes | 5,000.00 | |
| Stocks and real estate | 5,072.12 | |
| Machinery and equipment (net) | 1,758.92 | |
| Truck (net) | 479.16 | |
| Total Assets | | $57,944.67 |

Liabilities

| | | |
|---|---:|---:|
| Accounts payable and accruals | $ 1,720.94 | |
| Mrs. Wm. J. Flynn | 29,241.72 | |
| Total liabilities | | $30,962.66 |

Capital Accounts

| | | |
|---|---:|---:|
| Joseph J. Schallerer | $12,141.91 | |
| Charles Murphy, et al. Trustees of Trust "A" | 12,141.90 | |
| Trust "B" | 2,698.20 | |
| Total capital | | 26,982.01 |
| Total Liabilities and Capital Accounts | | $57,944.67 |

On March 12, 1943, taxpayer executed two separate trusts designated "A" and "B." The primary beneficiary in Trust "A" was his wife, and in "B," his daughter. Charles Murphy was named a trustee with the daughter in Trust "A," and with the wife in Trust "B," taxpayer transferred to Trust "A" an undivided 45/100 interest in the assets of the Calumet Pattern Works (except real estate and chattels real), and to Trust "B" a 10/100 undivided interest. The trustees were given broad powers, including the power to carry on the business enterprise of which the trust corpus was a part, either alone or as a copartner with any other person or corporation. The balance of the trust income, after taxes and administrative expenses, was to be paid to the beneficiaries in quarterly installments except that the first installment was not to become due and payable before three months after the income of the five pre-ceding calendar years had been ascertained. In the event the beneficiary predeceased the taxpayer, the corpus, but not the undistributed income, was to immediately revert to the taxpayer. The corpus and undistributed income of Trust "A", upon the death of taxpayer, was to be divided into as many portions as there were years in the life expectancy of Anna J. Schallerer at that time. One portion, together with the income of the trust estate, was to be distributed to the wife annually during her life, and upon her death to taxpayer's daughter or her issue. The corpus and undistributed income of Trust "B," upon the death of taxpayer, was to be divided into 240 shares. One share, together with the income, was to be distributed to the daughter, the undistributed balance was to go as appointed in her will and, in default of appointment, to her issue then 21 years of age, or accumulated until such issue reached the age

of 21. In the event of no issue surviving, then to taxpayer's wife, if living, and if deceased, to the taxpayer's then heirs-at-law. Each trust contained a spendthrift clause. Each of the trusts could be terminated by the primary beneficiary with the consent of the trustees, and in that case the entire corpus and undistributed income would go to the beneficiary immediately.

A partnership agreement, dated March 19, 1943, was executed by taxpayer and the respective trustees of Trust "A" and Trust "B," to commence on that date and to continue for a period of ten years unless sooner dissolved, as provided therein. It recited that the parties were the sole owners of the Calumet Pattern Works, with undivided interests as follows: taxpayer, 45 percent; Trust "A," 45 percent; and Trust "B," 10 percent.

The agreement provided that the profits and losses should be shared in proportion to the capital contribution of each partner; and that a reasonable salary be paid to each active partner.

Taxpayer, during the taxable years, had complete management of the business. Between 38 and 40 skilled pattern makers were employed who received annual salaries, with overtime, of approximately $5,000 each. Taxpayer drew no salary. Taxpayer's daughter, Grace, continued to be employed in the business. She was paid as an ordinary employee and her salary was not considered in any way in computing the income to which Trust "B" was entitled. Trustees Charles Murphy, an insurance man, and Anna J. Schallerer, taxpayer's wife, performed no services for the Calumet Pattern Works and received no salary from the business.

Partnership returns were filed on the basis of a fiscal year ended February 28, showing the respective distributable share of each partner. In determining the deficiencies, the Commissioner taxed all the income of the Calumet Pattern Works, adjusted to a calendar year basis, to taxpayer.

On the whole record, the Tax Court concluded that "during the taxable years, petitioner (taxpayer) and the trustees of the Trusts "A" and "B," or the primary bene-

ficiaries thereof, did not really and truly intend, in good faith, to join together in carrying on the business of Calumet Pattern Works as partners." The court upheld the Commissioner's deficiency determinations with some adjustments stipulated by the parties.

Did the Commissioner properly determine that the net income of the business known as Calumet Pattern Works for the years 1943 to 1946, both inclusive, should be taxed to taxpayer?

■ Whether or not the parties in a given case intended to form a co-partnership is a question of fact.

■ In this case a portion of the business capital was transferred in trust for the benefit of members of the taxpayer's family, and the ensuing partnership is made with the trustees. The transferring of titular ownership of a part of the taxpayer's business capital to a trustee, instead of directly to the donee, affects the legal form but not the economic substance of the arrangement. Stanton v. Commissioner, 7 Cir., 189 F.2d 297; Feldman v. Commissioner, 4 Cir., 186 F.2d 87. Whether the gift is made in trust or outright does not of itself suffice to make the donee the true owner of the donated capital, and hence a true partner, for income tax purposes.

Taxpayer contends that the trusts acquired their interests in the business assets "out of the interest owned by the deceased partner," and because of that urges that a bona fide partnership resulted. It was the taxpayer only who had the right, under the agreement with Flynn, the deceased partner, to acquire the assets and to continue the business upon the payment of the agreed price. Upon the taxpayer fell the obligation to make the requisite payments to the estate of the deceased partner by his own personal undertaking and further, the trust instruments state, which appears to be the actual fact, that the interest in the business assets was being conveyed by the taxpayer to the respective trusts.

Taxpayer's contention does not seem to have merit. It seems to matter little how the interests are traced, it appears that the business had no more assets after the crea-

tion of the partnership than it had before; and whatever interest was owned by the trusts ultimately came from the taxpayer. The two trusts invested in the business only what was given them by the taxpayer.

The record does not disclose that there was any business purpose to be served by the arrangement which was germane to conducting the business as a partnership. Taxpayer testified that the only purpose was that he wanted to insure that his family would retain a controlling interest in the business after his death and to facilitate the acquisition of a minority interest by "someone competent to operate the business, " or by "the key men in the shop who understood the business, knew all our customers and knew the working of it."

He further testified:

"Q. You say, then, that the main object, the thing you were worrying about was what would happen to the business when you die? A. That's right.

"Q. You weren't worried so much about how you are going to conduct the business right now, in '43, your worries were in the future when you died? A. That's right."

It thus appears, that the only purpose of the arrangement concerned what would happen to the business after his death. Taxpayer's own evidence seems to negate any intent to conduct the business as a partnership during his lifetime or to have the parties join together as true business partners during the taxable years here involved for the purpose of carrying on the business.

█ His admission that the members of his family would not be competent to carry on the business, is persuasive, that there was a lack of a "true intent * * * in good faith and acting with a business purpose * * * to join together in the present conduct of the enterprise."

The record leaves a doubt in our mind that such a present purpose existed.

█ As was said in Toor v. Westover, 9 Cir., 200 F.2d 713–714, "The District Court, in rendering its decision, was fully aware of the decision of the Supreme Court of the United States in the case of Com-

missioner of Int. Rev. v. Culbertson, 1949, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659, clarifying the principles developed in Commissioner of Int. Rev. v. Tower, 1946, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, and Lusthaus v. Commissioner, 1946, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679, wherein it was established as a primary test of reality of a family partnership for income tax purposes whether 'the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise.' 337 U.S., at page 742, 69 S.Ct., at page 1214. The Supreme Court further indicated the circumstances to be considered in determining tax validity: ' * * * the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent * * *.' "

In compliance with the test set out in the Culbertson case, the Tax Court examined the provisions of the trust instruments, the circumstances surrounding their creation, the partnership agreement, the conduct of the parties, the nature of the business, the testimony of the witnesses and all the circumstances of the case and from all these factors concluded, "that the parties did not, in good faith and acting with a business purpose, intend to join together in the present conduct of a business partnership * * *."

In its opinion the Tax Court said:

"Petitioner's contention is that since he created two valid trusts, and since a trust may legally enter into a partnership agreement, the income allocable to the capital contributions by the trusts may not be taxed to him. Stern, 15 T.C. 521. We think the issue may not be so limited, and involves a factual determination of whether, in the light of all the facts and circumstances, the parties, in good faith and acting with a business purpose, intended to join together in the conduct of a business partnership. Commissioner v. Culbert-

son, 337 U.S. 733 [69 S.Ct. 1210, 93 L. Ed. 1659]."

The Tax Court further said:

"The economic substance and realities of the facts and circumstances here shown indicate that the formation of the partnership with the trusts as partners had no effect upon the petitioner's business except in so far as the distribution of profits is concerned."

 Applying the test outlined in the Culbertson case, we find that in the case at bar the requirements of a valid family partnership, for income tax purposes, are not satisfied.

In this case the trustees and beneficiaries made no capital contributions to the business other than that donated as gifts to the trusts by the taxpayer. They performed no services; they took no part in the control or management of the business; they exercised no influence over the distribution of income. No distribution of income was made to the trusts during the period here involved.

The balance of the trust income, after taxes and administrative expenses, was to be paid to the beneficiaries in quarterly installments, except that the first installment was not to become due and payable before three months after the income of the five preceding calendar years had been ascertained. Hence the trustees never had absolute control, and the beneficiaries never had actual ownership of the accumulations of income to the trusts during the period here involved.

We conclude that the participation of the two trusts in the partnership was not a bona fide business arrangement for income tax purposes, as required by the Culbertson case.

The necessary economic substance and reality are lacking. Feldman v. Commissioner, 4 Cir., 186 F.2d 87–91.

None of the partners, other than the taxpayer, contributed any services to the partnership during the taxable years here involved and none of them exercised any control over, or participated in, the operation and management of the business in any way.

Taxpayer urges that the trusts were valid trusts and that their income is not taxable to him. Since no bona fide partnership existed within the purview of the taxing statute and since the business income was found to be taxable to the taxpayer, there was no income taxable to the trusts as partners. See Feldman v. Commissioner, 4 Cir., 186 F.2d 87. The trusts had no other income than that accumulated and reserved for distribution by the alleged partnership.

The findings of the Tax Court are conclusive on this court if they are supported by substantial evidence and are not clearly erroneous. Gates v. Commissioner, 10 Cir., 199 F.2d 291.

We find that the conclusion of the Tax Court is supported by substantial evidence and is not clearly erroneous. Its judgment is therefore

Affirmed.