SALVATORE APICELLA, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 56362, 56363, 56364. Filed August 9, 1957.

---

[1] Proceedings of the following petitioners are consolidated herewith: Rachel Apicella, Docket No. 56363, and Salvatore Apicella and Rachel Apicella (Husband and Wife), Docket No. 56364.

980

*Vincent B. Lewin, Esq.*, for the petitioners.
*Theodore E. Davis, Esq.*, for the respondent.

ARUNDELL, *Judge:* These consolidated proceedings involve deficiencies in income tax for the taxable years ended December 31, 1943 through 1950, as follows:

| Year | Deficiency | | |
|---|---|---|---|
| | Docket No. 56362 | Docket No. 56363 | Docket No. 56364 |
| 1943 | $1,316.09 | $425.85 | |
| 1944 | 16,354.94 | 13,829.04 | |
| 1945 | 23,039.42 | 18,686.92 | |
| 1946 | 35,455.11 | 29,533.16 | |
| 1947 | 13,856.60 | 9,573.96 | |
| 1948 | | | $27,734.75 |
| 1949 | | | 35,826.73 |
| 1950 | | | 23,656.88 |

The issues are: (1) Whether petitioner Salvatore Apicella, on December 23, 1936, created a valid trust for income tax purposes in favor of petitioners' three minor children; (2) whether petitioners are taxable on the entire liquidating dividend of a corporation which was liquidated on December 31, 1943, and (3) whether petitioners are taxable on the entire income from the operation of a furniture upholstery business carried on under the name of the Arrow Upholstery Company during the years 1944 through 1950, or whether petitioners' two sons and petitioner Salvatore Apicella, as trustee for his daughter, Marie, were also partners in the conduct of the business. All other issues raised by petitioners were abandoned at the hearing.

## FINDINGS OF FACT.

Petitioners are husband and wife. They filed separate returns for the years 1943 through 1947 and joint returns for the years 1948 through 1950. The returns were filed with the then collector of internal revenue for the third district of New York. Petitioners reside at Stamford, Connecticut.

Petitioner Salvatore Apicella (hereafter sometimes referred to as Salvatore) engaged in the sale and manufacture of upholstered furniture as a sole proprietor from approximately the year 1922 until the year 1934. Petitioner Rachel Apicella, the wife of Salvatore, contributed some capital and services to the sole proprietorship during the said years. In November 1933, Salvatore organized a corporation, Arrow Upholstery Co., Inc., under the laws of the State of New York, and as of January 1, 1934, the assets of the sole proprietorship were transferred to this newly formed corporation. In consideration for those assets, Arrow Upholstery Co., Inc., issued all of its capital stock in the amount of 200 shares of common stock, having a fair market value of $500 per share, to Salvatore. During the year 1936, Salvatore transferred 100 of the aforesaid shares of common stock to his wife, Rachel Apicella.

Petitioners had three children whose names and dates of birth are as follows:

Francis S. (also known as Frank) Apicella_____ Aug. 25, 1922
Salvatore Apicella, Jr_____ Aug. 25, 1925
Marie Apicella_____ July 4, 1929

On December 23, 1936, Salvatore created a trust which was to be governed by the laws of the State of New York. The trust was for the benefit of the above-mentioned three children of petitioners and was to continue until the death of Salvatore or until the youngest child attained the age of 25 years, whichever event occurred later. Salvatore was still living at the time of the hearing of these proceedings.

Salvatore designated himself as the sole trustee of the trust during his lifetime. Upon his death there were to be successor trustees. A part of the corpus of the trust consisted of 60 shares of the common stock of Arrow Upholstery Co., Inc., then owned by Salvatore. The trust indenture provided that additional property could be conveyed to the trust at any time. On November 15, 1937, petitioner Rachel Apicella transferred to the trust 34 shares of the common stock of Arrow Upholstery Co., Inc., then owned by Rachel. Of the 60 shares transferred by Salvatore, 20 shares were to be held in trust for each child. Of the 34 shares transferred by Rachel, 12 were to be held in trust for Frank and 11 shares were to be held in trust for each of the other two children. Salvatore filed a gift tax return for the calendar year 1936 and petitioner Rachel Apicella filed a gift

tax return for the calendar year 1937, in which returns the above gifts were reported.

The trust indenture provided in part:

That SALVATORE * * * has sold, assigned, transferred, granted, conveyed and set over and by these presents does hereby sell, assign, transfer, grant, convey and set over unto himself, as trustee, all of the right, title and interest owned, seized or possessed by him, individually, in and to the property described in Schedule "A" hereto annexed and made a part of this instrument, receipt whereof is hereby acknowledged, and does declare that he stands seized and possessed of the said property as trustee, upon the following terms, trusts and conditions, which are hereby imposed and impressed upon the said property, to wit:

FIRST: During the lifetime of the said SALVATORE APICELLA, the said property shall be held, managed, invested and reinvested by him as trustee and the income, rents, issues and profits thereof shall be collected by him and the net income, after payment of all proper charges and expenses shall be disposed of as follows:

(a) One-third (⅓) of said net income shall be applied, in the discretion of the trustee, for the support, education and maintenance of his son, FRANK APICELLA, until the said Frank Apicella shall attain the age of twenty-one (21) years, and any surplus income not so applied shall be accumulated by the trustee until such time. Upon the said Frank Apicella attaining the age of twenty-one (21) years the trustee shall pay over to him any accumulated income then in his hands, and thereafter the trustee shall pay over the entire net income of said fund to the said Frank Apicella until his death or until the death of the said SALVATORE APICELLA, whichever shall first occur.

Subparagraphs (b) and (c) of paragraph First were identical with (a) above except for the substitution of the names of the other two children, respectively. Subparagraph (d) of paragraph "First" provided:

(d) In the event that any of said three (3) children of the said Salvatore Apicella shall die during his lifetime, then the income which would otherwise have been paid to or applied to the use of such child so dying shall be paid over one-third (⅓) to the widow, if any, of said child (if such child be a male) and the balance of said income or the entire income in the event that said child shall not be a male, or shall not have left a widow him surviving, or if he shall have left a widow him surviving but such widow shall thereafter die during the lifetime of said Salvatore Apicella, shall be paid over and distributed among the then living issue of such child, per stirpes, or in default of such issue to and among the other children or issue of the said Salvatore Apicella then living, per stirpes.

Paragraph Second of the trust indenture provided that on the death of Salvatore, all right, title, interest, and ownership in and to the trust property shall pass to and be vested in the successor trustees, who were to hold, manage, invest, and reinvest the trust property upon substantially the same terms as provided in paragraph "First" except that the trust fund was then to be divided into three equal shares and, as each child attained the age of 21 years, he or she was to receive one-half of his or her share of the corpus and, as each child attained the age of 25 years, he or she was to receive his or her

entire share of the corpus, in which event "the said trust fund shall cease and determine with respect to the share of such child."

Paragraph Fourth of the trust indenture provided:

FOURTH: During his lifetime and so long as he shall be acting as trustee of this trust fund, the said Salvatore Apicella shall have the following rights, powers and authority:

(a) To invest and reinvest the principal in such stocks (common and preferred), bonds and other property, real or personal, as he may determine in his discretion, whether or not the same be authorized by law for the investment of trust funds.

(b) To join in or become a party to any agreement of reorganization, readjustment, merger, consolidation or exchange, to deposit any securities thereunder, or to exercise rights to subscribe to new securities, and to pay and charge such trust with any sums which may be required thereby, and to receive and hold any new securities issued as a result thereof, whether or not the same be authorized by law for the investment of trust funds.

(c) To exercise any right or option of subscription or otherwise attached or which may at any time belong to, or be given to, the holders of any stocks, bonds, securities or other instruments in the nature thereof forming a part of the trust estate, and in the exercise of such rights or options to use principal or income as he may see fit.

(d) To sell and convey or to mortgage, partition, lease, pledge or otherwise dispose of any or all property, real or personal, at any time constituting an asset of said trust fund, free and clear of all "trusts and limitations," and without liability on the part of the purchaser or purchasers, mortgagee or mortgagees, pledgee or pledgees, or lessee or lessees, to see to the application of the purchase money, pledge or lease money.

(e) To vote in person or by proxy, in his discretion, at any and all meetings, general or special, of stockholders, upon all shares of stock, or of bondholders, upon all bonds, at any time constituting assets of said trust fund, in respect to any and all matters considered at such meetings.

(f) To purchase from, sell to, pledge, mortgage, lease, partition, and otherwise in every and any respect whatsoever to deal with himself, individually, in carrying on the administration of said trust fund, and also, specifically and without limitation upon any of the foregoing powers, to purchase and retain as investments of said trust fund common stock, preferred stock, bonds, notes and debentures, secured or unsecured, in such amounts as he may deem advisable of the "Arrow Upholstery Co. Inc." or of any corporation in which the said Salvatore Apicella may be interested, either as stockholder, bondholder, officer, director, or otherwise, or which he may control in any manner, without liability therefor, provided such transactions between the said trustee and himself, individually are made in good faith and in the exercise of sound discretion.

The trust had no income during the years 1936 to 1943, inclusive. Arrow Upholstery Co., Inc., declared no dividends during those years.

On December 30, 1943, the stockholders of Arrow Upholstery Co., Inc., held a special meeting. The minutes of this meeting are in part as follows:

The chairman then directed the Secretary to call the roll of Stockholders from the stock book of the Company. The following Stockholders were present in person or by proxy.

| Names | Number of shares |
|---|---|
| Anthony Valenti | 1 |
| Leonard A. Verrilli | 1 |
| Francis M. Verrilli | 1 |
| Rachel Apicella | 66 |
| Salvatore Apicella, individually and as trustee | 131 |

The chairman then stated that a majority of the total number of shares of the capital stock of the Company issued was represented and that the meeting was ready to transact any business before it. The chairman then informed the stockholders that the Board of Directors of the Company had concluded that it was for the best interests of the Stockholders and of the Company to cease conducting business and that it was in the interests of the Stockholders and of the Company to distribute to the Stockholders as a liquidating dividend the assets in kind of the Corporation in the proportionate shares of the Stockholders held by each of them and that commencing with the 1st of January, 1944, the Company would cease to engage actively in the manufacture of upholstery furniture but would retain its corporate charter.

On December 31, 1943, Arrow Upholstery Co., Inc., was liquidated and the total liquidating distribution in the amount of $119,023.45 was used as the basis for capital investments in a so-called limited partnership then being organized under a written agreement dated December 31, 1943, between Salvatore, Rachel Apicella, Frank Apicella, Salvatore Apicella, Jr., and Salvatore Apicella, as trustee of the trust created on December 23, 1936. This agreement provided that the first four individuals shall be general partners; that Salvatore, in his capacity as trustee, shall be a special partner; that the name of the partnership shall be the Arrow Upholstery Company; that each partner shall contribute the sum of $10,000 to the capital of the partnership; and—

12. That the profits that may accrue from the business of said partnership * * * shall be divided as follows:

Salvatore Apicella, as trustee etc., special partner, shall receive a sum equivalent to 25% of the profits of said business and the remaining 75% of the profits of said business shall be divided among the general partners in the following proportions:

| | | |
|---|---|---|
| a) Salvatore Apicella | | 10% |
| b) Rachel Apicella | | 15% |
| c) Frank Apicella | | 25% |
| d) Salvatore Apicella, Jr | | 25% |

13. The losses * * * shall be borne by all of the partners in the same proportions in which they are entitled as aforesaid, to share in the profits of the partnership; but the special partner shall, not be liable for, in any event, to any loss whatsoever in excess of the amount of capital contributed * * *

\*    \*    \*    \*    \*    \*    \*

22. That during the term of this agreement, Salvatore Apicella, shall be the active and managing partner, and for his services shall draw a sum not to exceed Nine Thousand ($9,000.00) Dollars annually, for his services, and Rachel Apicella, shall draw a sum not to exceed Three Thousand ($3,000.00) Dollars

for her services, said sums shall be considered as expenses of the partnership, before any division of profits is made.

Only one capital account was carried on the books of the so-called partnership. This account was credited with $119,023.45 at the time the partnership agreement was entered into on December 31, 1943. The so-called partnership, however, kept a subsidiary record called "Arrow Upholstery Co. Capital Accounts—Partners," the opening entry of which allocated the total amount among the five alleged partners as follows:

| Partner | Jan. 1, 1944, investment | Per cent |
|---|---|---|
| Salvatore Apicella | $23,804.69 | 20.0 |
| Rachel Apicella | 39,277.74 | 33.0 |
| Frank Apicella | 19,043.76 | 16.0 |
| Salvatore Apicella, Jr | 18,448.63 | 15.5 |
| Marie Apicella (S. A., trustee) | 18,448.63 | 15.5 |
| Total | 119,023.45 | 100.0 |

At the time of the liquidation, the stock of Arrow Upholstery Co., Inc., was held as follows:

| Stockholder | Shares | Per cent |
|---|---|---|
| Salvatore Apicella | 40 | 20.0 |
| Rachel Apicella | 66 | 33.0 |
| S. A., trustee for Frank | 32 | 16.0 |
| S. A., trustee for Salvatore, Jr | 31 | 15.5 |
| S. A., trustee for Marie | 31 | 15.5 |
| Total | 200 | 100.0 |

The books of account and records of the alleged partnership, Arrow Upholstery Company, reflect drawings charged to Frank Apicella, Salvatore Apicella, Jr., and Marie Apicella for the purposes and in the amounts indicated in the schedule below during the years 1944, 1947, 1948, 1949, and 1950:

| Year | Purpose | Frank | Salvatore, Jr. | Marie |
|---|---|---|---|---|
| 1944 | Fed. & State income taxes | $955.90 | $738.93 | $662.84 |
| | U. S. Government bonds | 3,700.00 | 3,700.00 | 3,700.00 |
| 1947 | Salaries | 5,200.00 | 3,120.00 | 245.00 |
| | Fed. & State income taxes | 3,243.04 | 2,915.78 | 2,091.59 |
| 1948 | Salaries | 5,200.00 | 3,120.00 | 280.00 |
| | Fed. & State income taxes | 5,982.90 | 4,704.35 | 4,073.84 |
| 1949 | Salaries | 1,400.00 | 2,160.00 | 280.00 |
| | Fed. & State income taxes | 1,975.57 | 3,761.40 | 3,304.09 |
| 1950 | Salaries | | 3,120.00 | 280.00 |
| | Fed. & State income taxes | 1,565.32 | 2,650.47 | 1,909.58 |

The following drawings upon Arrow Upholstery Company were charged to Frank Apicella, Salvatore Apicella, Jr., and Marie Apicella for the purposes and in the amounts indicated below during the years 1945 and 1946:

| Year | Purpose | Frank | Salvatore, Jr. | Marie |
|------|---------|-------|----------------|-------|
| 1945 | Payments on Federal income estimated taxes | $3,900.00 | $3,900.00 | $3,900.00 |
| 1946 | {Salaries | 3,700.00 | | |
| | {Fed. & State income taxes | 19,187.66 | 16,727.96 | 16,727.96 |

Drawings charged to Frank Apicella for salary were computed upon a basis of $100 per week for the years 1946 to 1949, inclusive. The charge to Frank for salary reflected for the year 1949 is for the first 14 weeks of that year.

Drawings charged to Salvatore Apicella, Jr., for salary were computed upon a basis of $60 per week for the years 1947 to 1950, inclusive.

Drawings charged to Marie Apicella for salary were computed upon a basis of $35 per week for the years 1947 to 1950, inclusive.

During the year 1945, United States savings bonds were purchased in the names of petitioners' children, with funds of the Arrow Upholstery Company, in the face amount of $15,000. The "Arrow Upholstery Co. Capital Accounts—Partners" of each child was charged with $3,750, or a total of $11,250, to make these purchases.

During the year 1946, the "Arrow Upholstery Co. Capital Accounts—Partners" of each child was charged with $12,000, or a total of $36,000, which $36,000 was transferred to a bank account in the National City Bank on October 19, 1946, in the name of Salvatore Apicella, trustee. On October 25, 1946, the so-called trustee used $31,135.10 of the $36,000 to purchase $10,000 face value of United States Treasury bonds, 2½ per cent interest, for each of the children.

The bonds purchased in 1944, 1945, and 1946 were all held by Salvatore Apicella in a custodian account, which account was first opened in 1946 with the National City Bank and in 1949 was transferred to the Chemical Bank & Trust Company.

For the year 1943, individual returns were filed for each member of the Apicella family, in which returns each member reported a long-term capital gain from the liquidation of Arrow Upholstery Co., Inc., as follows:

| | |
|---|---|
| Salvatore | $3,934.95 |
| Rachel | 6,492.66 |
| Frank | 3,049.59 |
| Salvatore, Jr | 3,049.59 |
| Marie | 3,147.96 |
| Total | 19,674.75 |

The respondent determined that the long-term capital gain realized on the liquidation was $19,439.50 and that one-half of this amount should have been reported by Salvatore and one-half by Rachel.

Partnership returns of income were filed for the Arrow Upholstery Company for the years 1944 through 1950. The returns for 1944 through 1947 listed petitioners and each child as partner. The returns for 1946 and 1947, under "Schedule H—Balance Sheets," listed under "13. Partners' capital accounts" the names of each of the five members of the Apicella family, together with the amount of alleged capital in the respective account. The return for 1948 did likewise but listed the partners as being petitioners, their two sons, and "S. Apicella Trustee for Marie Apicella." The returns for 1949 and 1950, under "Schedule H—Balance Sheets" listed, under "13. Partners' capital accounts" and under the respective schedule calling for the name of each partner, the name of each petitioner and "Salvatore Apicella Trustee" for each of the three children.

No fiduciary income tax returns were filed except for the years 1948, 1949, and 1950. For the years 1944 through 1947 the income of the business of Arrow Upholstery Company was reported in the individual income tax returns of petitioners and their three children. On each of the fiduciary returns, the fiduciary reported as income from partnerships 75 per cent of the income of Arrow Upholstery Company. For the years 1948 and 1949, the fiduciary deducted from such income as amounts distributable to beneficiaries the shares of the two sons of petitioners who were then over 21 years of age. Marie became 21 on July 4, 1950, and for the year 1950 the fiduciary deducted from such income as amounts distributable to beneficiaries the shares of all the children of petitioners.

The respondent determined that petitioners were equal partners in the business of Arrow Upholstery Company and were taxable on 100 per cent of the income thereof instead of only 25 per cent as reported by them on their returns.

In 1943, both Frank and Salvatore, Jr., were in the armed services of the United States. They come out of service in 1946, at which time Frank began devoting full time to the business of Arrow Upholstery Company. Salvatore, Jr., still had some schooling to finish and devoted only part time to the business. Beginning about 1947, Marie worked part time during the summer months. Frank devoted no time to the business during 1950 and only part time during 1949.

Salaries were paid by Arrow Upholstery Company to petitioners as follows:

| Year | Salvatore | Rachel | Year | Salvatore | Rachel |
|------|-----------|--------|------|-----------|--------|
| 1944 | $9,000 | $3,000 | 1948 | $18,000 | $3,000 |
| 1945 | 9,000 | 3,000 | 1949 | 18,000 | 3,000 |
| 1946 | 12,750 | 3,000 | 1950 | 18,000 | 3,000 |
| 1947 | 18,000 | 3,000 | | | |

The above-mentioned partnership agreement dated December 31, 1943, also provided that "all funds of the co-partnership shall be

deposited with the Chemical Bank & Trust Company * * * and may be drawn against solely upon the signatures of Salvatore Apicella or Rachel Apicella, and no other partner shall have the power to draw against said account."

On May 3, 1946, petitioners and their two sons addressed a "Partnership Letter" to the Chemical Bank & Trust Company, which stated in part as follows:

WE, the undersigned General Partners of the firm of The Arrow Upholstery Company * * * HEREBY CERTIFY that our firm is composed of the following Special Partners: Salvatore Apicella as trustee under a deed of trust for the benefit of Marie Apicella and the following General Partners: Salvatore Apicella, Rachel Apicella, Salvatore F. Apicella, Jr., and Francis S. Apicella, and that only Salvatore Apicella, Rachel Apicella and Francis S. Apicella have and shall have full authority to incur any liability on behalf of the firm and otherwise to represent and sign for the firm in all regards, except as such authority may from time to time be expressly limited by notice in writing signed by one or more of the General Partners and filed with you.

The previously mentioned "Arrow Upholstery Co. Capital Accounts—Partners" were charged with the salaries paid to each member of the Apicella family, the United States bonds purchased, and taxes, and were credited with the taxable income (including the salaries) of the business conducted under the name of the Arrow Upholstery Company. The balances in these accounts on December 31, 1950, were as follows:

| | |
|---|---|
| Salvatore Apicella | $23,681.67 |
| Rachel Apicella | 38,126.98 |
| S. A., trustee for Frank [2] | 64,702.41 |
| S. A., trustee for Salvatore, Jr [2] | 66,017.46 |
| S. A., trustee for Marie | 68,788.18 |

The parties did not, acting in good faith and with a business purpose, intend that either the trust or the sons join together with petitioners as partners in carrying on the business conducted under the name of the Arrow Upholstery Company.

OPINION.

The two questions raised in these proceedings are similar to ones repeatedly before the courts but, as the answers rest essentially on the particular facts, the questions never become finally settled. We have first the matter of the taxability of the income of a trust created by a parent for the benefit of his children and, secondly, the validity of a family partnership in which the parents purport to make their children partners in the conduct of the business.

The respondent in his determination has disregarded the trust and has taxed the entire long-term capital gain from the liquidation of

[2] Prior to 1949, the so-called capital accounts for Frank and Salvatore, Jr., were in their individual names rather than in the name of Salvatore Apicella, trustee for Frank and Salvatore, Jr., respectively.

the corporation in 1943 to petitioners and has likewise taxed to them the entire earnings of the business conducted under the name of the Arrow Upholstery Company for the years 1944 through 1950 under sections 22 (a) and 181 of the Internal Revenue Code of 1939.[3]

The fact that petitioner Salvatore Apicella made himself the sole trustee for the remainder of his life with the broad rights, powers, and authority set out in paragraph Fourth of the trust instrument, goes a long way to bring the trust within the doctrine announced in *Helvering* v. *Clifford*, 309 U. S. 331. But any doubt one might have at this point disappears when viewed along with the conduct of petitioners in administering the trust. Under the terms of the trust, the grantor was free during his lifetime to invest and reinvest the principal as he might determine, whether or not the same be authorized by law for the investment of trust funds. In the exercise of certain rights and options he could use the principal or income "as he may see fit." Mortgagees, pledgees, or lessees dealing with the grantor were without liability to see to the application of the purchase money, pledge, or lease money. And for the remainder of his life the grantor, as trustee, could deal with himself, individually, "without liability therefor, provided such transactions between the said trustee and himself, individually are made in good faith and in the exercise of sound discretion." Such broad powers as these reserved to the grantor for his lifetime tend to support the argument that the grantor continued to be the owner, for income tax purposes, of the property conveyed to the trust, under the *Clifford* doctrine.[4]

The application of the *Clifford* doctrine becomes all the more persuasive when an analysis is made of the loose manner in which the grantor-trustee administered the purported trust. Instead of filing a

---

[3] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

SEC. 181. PARTNERSHIP NOT TAXABLE.

Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity.

[4] In the *Clifford* case, the Supreme Court, among other things, said (p. 334):

Technical considerations, niceties of the law of trusts or conveyances, or the legal paraphernalia which inventive genius may construct as a refuge from surtaxes should not obscure the basic issue. That issue is whether the grantor after the trust has been established may still be treated, under this statutory scheme, as the owner of the corpus. * * * the answer * * * must depend on an analysis of the terms of the trust and all the circumstances attendant on its creation and operation. And where the grantor is the trustee and the beneficiaries are members of his family group, special scrutiny of the arrangement is necessary lest what is in reality but one economic unit be multiplied into two or more by devices which, though valid under state law, are not conclusive so far as § 22 (a) is concerned.

fiduciary return for 1943 and reporting therein the long-term capital gain from the liquidation of the corporation which would under the trust instrument belong to the trust, he caused the three children to file individual returns for 1943, in which returns they reported a total of 47 per cent of the gain from the liquidation. Simultaneously with the liquidation, he had the lawyer who had drawn up the trust indenture draw up the partnership agreement. As set out in our findings this agreement provided that petitioners and their two sons were to be general partners and petitioner Salvatore Apicella, as trustee for Marie, was to be a special partner. The agreement further provided that each of the five so-called partners was to contribute $10,000 as capital. Instead of such contributions, the entire assets of the corporation were transferred to the new partnership and became its capital. Petitioners have requested us to find that because of this latter fact the three beneficiaries "actually received the corpus of the trust required to be paid to them under the terms of the aforementioned trust." But, under the terms of the trust, no corpus could be distributed until the beneficiary attained the age of 25, or until the death of Salvatore Apicella, whichever occurred later. Although at the time of the liquidation the stock of the corporation was allegedly held 53 per cent by petitioners and 47 per cent by the trust, the profits of the so-called partnership were to be shared 25 per cent by the two petitioners, 50 per cent by the two sons, and 25 per cent by the trustee for Marie. No fiduciary returns were filed for the years 1944 to 1947, inclusive. It was not until a revenue agent called the trustee's attention to his failure to file such returns that fiduciary returns were filed for the years 1948, 1949, and 1950. Although the trust instrument made it mandatory that one-third of the trust income was to be paid over to each beneficiary upon such beneficiary's attaining the age of 21, this was not done. Apparently no books of account as such were kept for the trust, the only records being the "Arrow Upholstery Co. Capital Accounts—Partners" referred to in our findings. These accounts were credited with the earnings of the alleged partnership (including salaries) and debited with amounts withdrawn for payment of taxes, purchase of bonds, and salaries paid. It is none too clear from the record whether the bonds purchased for the children have been turned over to them although the accountant testified that they were turned over to the children "recently."

In view of the foregoing, the trust created on December 23, 1936, should not be recognized for income tax purposes, and petitioners should be regarded as the owners of the property transferred to the trust in 1936 and 1937. *Helvering* v. *Clifford, supra; Edison* v. *Commissioner*, (C. A. 8, 1945) 148 F. 2d 810; *Anna Morgan*, 5 T. C. 1089; *Hash* v. *Commissioner*, (C. A. 4, 1945) 152 F. 2d 722; *Paster* v. *Commissioner*, (C. A. 8, 1957) 245 F. 2d 381. The cases relied upon by

petitioners, such as *Hall* v. *Commissioner*, (C. A. 10, 1945) 150 F. 2d 304, and *United States* v. *Morss*, (C. A. 1, 1947) 159 F. 2d 142, are distinguishable upon their facts.

Since we have held petitioners should be regarded as the owners of all of the capital stock of the corporation at the time it was liquidated in 1943, it follows that the respondent did not err in determining that the long-term capital gain resulting from the liquidation of the corporation was taxable to petitioners.

Respondent determined and concedes that during the taxable years 1944 through 1950, petitioners were equal partners in the business conducted as the Arrow Upholstery Company. The partnership agreement drawn up on December 31, 1943, attempted also to make the two sons general partners and Salvatore Apicella, as trustee for Marie, a special partner. Petitioner Salvatore Apicella in his petition alleges as a fact upon which he relies that "the partnership was formed, consisting of the taxpayer herein, his wife, Frank Apicella, Salvatore Apicella, Jr., and Salvatore Apicella as Trustee." Similar allegations were made in the other two petitions. These allegations, as far as the parties to the alleged partnership are concerned, are in accord with the written partnership agreement entered into on December 31, 1943. Petitioners, however, in their brief, say: "The only error that may have been committed was the creation of the partnership with the beneficiaries of the trust, Frank Apicella and Salvatore Apicella, Jr. as general partners, whereas the trust was actually in effect at that time" and so they now contend that the partnership should be considered as composed of petitioners and petitioner Salvatore Apicella as trustee for the *three* children. Both petitioners testified at the hearing that it was their intention at the time the corporation was liquidated and the partnership formed simply to carry on the same business with the "stockholders" of the corporation as the partners of the partnership. If that were their intention, then why did the partnership agreement name the two sons as general partners, and why do the pleadings filed by petitioners do likewise? Neither of the two sons was a stockholder of the corporation. We need not labor the point longer in view of our holding above that the trust will not be recognized for income tax purposes. It follows that the trustee of the trust will not be recognized as a partner in the business being conducted as the Arrow Upholstery Company. Neither do we think the sons were partners with their parents in that business.

The burden of establishing the validity of a partnership consisting of more partners than the petitioners themselves is upon petitioners. *Commissioner* v. *Culbertson*, 337 U. S. 733. The Supreme Court in the *Culbertson* case emphasized that the test of the validity of an alleged family partnership for tax purposes was the ultimate deter-

mination of a question of fact from all the evidence of whether "the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise."

We do not think the sons can be said to meet this test laid down by the Supreme Court. They contributed no capital as such and were in the armed services at the time the alleged partnership was formed, and thus contributed no services until in the spring of 1946 when they were discharged from the service.[5]

There is no evidence of record as to the nature of the sporadic services rendered by petitioners' sons, or of their value to the business, i. e., whether they were vital or incidental, or whether they were managerial or clerical. There has been no showing that by contributing substantial or vital services petitioners' sons made a substantial contribution to the earnings of the partnership and thereby assisted in management of the business as partners.

Neither one of the sons testified at the hearing although they were both adults at the time. Apparently Frank was no longer connected with the business after the spring of 1949 as he ceased drawing a salary at that time.

In view of the foregoing, we hold that petitioners have failed to establish the existence of a partnership consisting of more partners than the petitioners themselves. *Commissioners* v. *Culbertson, supra; Coca-Cola Bottling Co. of Sacramento*, 17 T. C. 101, affirmed sub nom. *Sellers* v. *Commissioner*, (C. A. 9, 1955) 218 F. 2d 380; *Feldman* v. *Commissioner*, (C. A. 4, 1950) 186 F. 2d 87, affirming 14 T. C. 17; *Eisenberg* v. *Commissioner*, (C. A. 3, 1947) 161 F. 2d 506; *Stanback* v. *Robertson*, (C. A. 4, 1950) 183 F. 2d 889.

*Decisions will be entered under Rule 50.*

---

[5] In the *Culbertson* case, the Supreme Court, in a footnote, said:

Of course one who has been a bona fide partner does not lose that status when he is called into military or government service, and the Commissioner has not so contended. On the other hand, one hardly becomes a partner in the conventional sense merely because he might have done so had he not been called.