Lambert Willett et al. [1] v. Commissioner. Willett v. Commissioner
Docket Nos. 47500-47504.
United States Tax Court
1958 Tax Ct. Memo LEXIS 212; 17 T.C.M. (CCH) 93; February 7, 1958
*212 Charles I. Dawson, Esq., Rucker Todd, Esq., and John A. Fulton, Esq., for the petitioners. Charles R. Hembree, Esq., for the respondent. HARRON Supplemental Memorandum Findings of Fact and Opinion HARRON, Judge: Following the filing of the Memorandum Findings of Fact and Opinion in these cases (T.C. Memo. 1957-189), petitioners filed a motion to reopen the record in these cases to receive additional evidence, including testimony of Norman Willett. The motion having been granted and such testimony and additional exhibits having been made part of the record, further consideration has been given to one question, whether Norman Willett was a bona fide member of the partnership, Willett Brokerage Company. Some facts which were found in the original Findings of Fact, set forth in the original report in these cases, are restated here for clarity and convenience. Supplemental Findings of Fact Norman Willett is one of the sons of Lambert and Mary T. Willett. In 1945, he was 34 years old. He is now over 46 years of age. He has lived in California since 1940, where he has been employed as an aeronautical engineer at an average salary of $450 per month. He is a graduate *213 engineer. He is married and has 3 children. Willett Brokerage Company was a partnership which was originally organized on January 1, 1945, by Lambert and Mary T. Willett, and their children, John, Paul, and Mary C., which had its place of business in Bardstown, Kentucky where Lambert and his family lived. In this partnership the original, proportionate interests of Lambert and Mary T. were, respectively, 2,195/5000 and 953/5000. The partnership engaged in the business of buying and selling whiskey at wholesale. On January 1, 1945, Lambert purportedly gave Norman an interest in the partnership of 286/5000 out of his existing interest. At the same time, Lambert made gifts of interests in the partnership, out of his interest, to other children. The gifts were evidenced by a written document entitled, "Bill of Sale," dated January 1, 1945. The document was a combination bill of sale and agreement on the part of the donees of the purported gifts to accept the gifts and become members of the partnership, and it set forth the interest of each member of the Willett family in the partnership after giving effect to the gifts as evidenced in the document. Norman signed the document. He *214 intended, in signing the document, to accept Lambert's gift and to become a partner under the terms of the original partnership agreement which, also, was dated January 1, 1945. He understood that as a partner he had a liability for debts of the partnership and was entitled to a share of the profits based upon his 286/5000 interest. Norman did not give any consideration for the interest in the partnership. Lambert intended to make a gift to Norman of a 286/5000 interest in the partnership. On the books of the partnership, a capital account was opened in the name of Norman to which a credit was made of $872.10, as the value of the 286/5000 interest which was given to him by his father. All of the formal requirements of forming a partnership were followed, among them the filing of a certificate of partnership in the office of the Clerk of the County Court of Nelson County, Kentucky where Bardstown is located. Such certificate of partnership, which set forth the members of the partnership after the gifts of interests in the existing partnership had been made, was filed. Norman personally signed that certificate. From time to time, credits of his proportional share of the earnings *215 of the Willett Brokerage Company partnership were made to Norman's capital account. From time to time payments were made to Norman by the partnership, under its checks, and such payments constituted withdrawals by Norman of profits of the partnership which had been credited to him. The payments were debited in Norman's capital account in the partnership's books. The first withdrawal check made payable to Norman, dated February 4, 1946 was for $1,550 and it was deposited to the joint account of Norman and his wife, Joan, in the Burbank State Bank, Burbank, California, at which place they were then living. After that deposit had been somewhat reduced by checks drawn by Norman and his wife against same, the balance was withdrawn and placed to their credit in the California Bank at Hollywood, California. All subsequent checks received by Norman from the Willett Brokerage Company, representing withdrawals against earnings of that company to his credit on the books of that company, were either in whole or in part deposited to the joint account of Norman and his wife in the California Bank in Hollywood, California. On some occasions, Norman would deposit only a part of the check taking *216 the balance in cash. He deposited in this same joint account portions of his salary checks, which amounted to approximately $450 per month, and as he and his wife would need money for different purposes checks were drawn against that joint account. All of the earnings of the Willett Brokerage Company attributable to Norman's 286/5000 interest therein were withdrawn from the partnership and disposed of in the same manner as set forth above. In 1946, another son of Lambert and Mary T. Willett, Charles, became 21 years of age. Lambert, in June 1946, made a gift of 212/5000 interest in the Willett Brokerage Company partnership, out of his interest, to Charles, and Mary T. made a gift to him, out of her interest, of a 74/5000 interest. Charles accepted the gifts. Thereupon a new partnership was formed on June 25, 1946, having the same name. The second partnership agreement showed Norman to be a partner, among the others who had been partners in the original partnership. Norman was living in California when the second partnership was formed. He knew that a new partnership was being formed and that Charles was a new partner. Lambert executed the new partnership agreement for Norman as his *217 attorney in fact. While Norman did not actively participate in the management of the Willett Brokerage Company, he was kept informed in a general way about its affairs by telephone and by letter, and he was consulted about the more important aspects of its business. He regularly received financial statements disclosing the operations and condition of the partnership from the time he became a member of the partnership until its dissolution. Those financial statements included balance sheets, profit and loss statements, and a statement of the net earnings to Norman's credit on the books of the company. Those financial statements were customarily sent to him by Mary C. On one occasion, at the request of his father, Norman made considerable effort over a considerable period of time, to sell some of the liquor belonging to Willett Brokerage Company to California persons, but his efforts were unsuccessful. On July 30, 1947, a corporation named Wildwood was organized by the Willetts, to which almost all of the assets of Willett Brokerage Company, consisting of an inventory of whiskies, was transferred in exchange for all of Wildwood's stock. Also, preferred stock was issued in exchange *218 for notes of members of the partnership. For a period of about two weeks prior to August 18, 1947, Norman was in Washington, D.C., and while there he had two telephone conversations with Mary C., a partner, who was in Bardstown. In the first conversation, they discussed a plan to transfer certain assets of the partnership to the recently organized Wildwood Corporation in exchange for the latter's common stock which was to be distributed to the members of the partnership so that each would receive stock in the corporation in proportion to his interest in the partnership. Norman agreed to this plan and they discussed whether the papers carrying out such exchange should be sent to him in Washington for his signature. In the second telephone conversation, it was agreed that inasmuch as Norman planned to go to Bardstown from Washington when his business in Washington was concluded, the papers would be held in Bardstown for his signature upon his arrival there. He arrived in Bardstown on August 18, 1947, and signed the transfer papers on that date, the same having been signed by the other partners prior to that date. The transfer papers were dated July 31, 1947, and they recited that Wildwood *219 Corporation had already been organized; they provided that the transfer and exchange of partnership assets for the common stock of Wildwood should be completed on August 1, 1947; and there was attached thereto a balance sheet of Willett Brokerage Company as of July 31, 1947. When assets of the partnership were exchanged for common stock in Wildwood, Norman, along with the other partners, received common stock in proportion to his partnership interest, namely, 19 shares having a par value of $1,900. Also Norman received preferred stock in exchange for his note. On August 19, 1947, Thompson and Lambert Willett attended a meeting in New York City with a whiskey broker, Fred Metzger, and representatives of corporations to discuss the possibilities of a sale of the common stock of Wildwood. At this time Norman was visiting his parents at their home in Bardstown and learned that Thompson and Lambert were in New York negotiating with a prospective purchaser of the Wildwood stock. After Lambert and Thompson returned to Bardstown, there was a discussion of the stockholders of Wildwood, including Norman, about the proposals of Distillers Distributing Corporation and West Shore Wine & Liquor *220 Company, Inc. to purchase the Wildwood stock. Norman's opinion was expressed. Finally, the stockholders, including Norman, agreed to accept the proposition for the sale of Wildwood common stock. When the transaction was carried out, Norman surrendered his preferred stock in Wildwood and received back his note which he had given for that stock, and he received $19,843.29 for his Wildwood common stock. In connection with the sale of the Wildwood common stock there were various charges which were to be paid by the stockholders of Wildwood. Norman complied with a request from Mary C. to make out and to send to her two checks, one for $702.43, and another for $745.10, payable to the order of John T. McGinnis, a vice president of Farmers Bank and Trust Company. Norman's two checks, dated November 17, 1947, were drawn on his and his wife's joint account in the California bank. Mary C. received the checks and delivered them to McGinnis. Willett Brokerage Company was finally liquidated in 1948, and Norman then received two checks, one for $77.87 and one for $3,111.39, representing his share of the amount realized by the Brokerage Company in such liquidation. No part of the money received *221 by Norman on account of his interest in Willett Brokerage Company and on account of the sale of his stock interest in Wildwood Corporation was given to, or spent for the benefit of, either his father or his mother, but all was used by Norman exclusively for his own purposes and to meet his own obligations. Lambert Willett placed no restriction whatever on the gift to Norman of a 286/5000 interest in Willett Brokerage Company, or on the use to which it would be put; and Lambert retained no economic interest in either the corpus of the gift or the income therefrom, and he exacted no agreement from Norman that any other person should have any interest whatever in either the corpus or the income therefrom, and no such agreement was ever made. Lambert Willett made a completed bona fide gift to Norman in January 1945 of a 286/5000 interest in the Willett Brokerage Company partnership. Norman accepted the gift. Norman received payment of his proportionate share, from time to time, of the net earnings of Willett Brokerage Company partnership, and he devoted such receipts to the use of himself and his family. He received cash for the Wildwood common stock, which was issued to him when *222 assets of the partnership were transferred to the corporation in exchange for common stock, thereby receiving cash for partnership assets in which he had an interest by virtue of the gift to him of a 286/5000 interest in the partnership from Lambert. Norman had dominion and control over the proceeds which he received from the sale of his Wildwood common stock. In June 1948, Norman loaned Willett Distilling Company in Bardstown, all of whose stock is owned by members of the Willett family, $3,000, by giving his check for that amount drawn on his joint account in the California bank. Norman received a note of Willett Distilling Company for $3,000, due 2 years from date, as evidence of the loan. The note was duly paid to Norman, who used the proceeds exclusively for his own purposes. Norman intended in good faith and with a business purpose to join together with Lambert, Mary T., Thompson, John, Paul, and Mary C., as a partner, in the present conduct of the business carried on under the name, Willett Brokerage Company, and they, with the same intent, accepted him as a partner. Norman was a bona fide partner of the Willett Brokerage Company partnership from January 1, 1945, until the *223 dissolution of the partnership in 1948. Supplemental Opinion One of the issues presented by the pleadings in these cases is whether four children of Lambert and Mary T. Willett became partners in the Willett Brokerage Company partnership. The four children in question are Joseph, Robert, Charles, and Norman. It was found and concluded in the original report in these cases that the first three children in the above group were bona fide partners. With respect to Norman, it was concluded that the petitioner failed to introduce evidence which was, in our opinion, sufficient to establish under applicable rules of law that Norman was a partner. He did not appear at the original trial and no testimony of his was presented under deposition. We stated in the original opinion as follows: "But the question of whether Norman intended to join with the others in the present conduct of the business and to share in losses as well as profits is not answered merely by showing that the various formal steps were taken by Lambert. Petitioners have failed to prove that Norman was a bona fide member of the partnership. Salvatore Apicella, et al., 28 T.C. 979. (August 9, 1957.)" When *224 petitioners filed a motion to open the record to receive testimony of Norman and additional evidence relating to the question now under consideration, it was deemed to be proper to grant the motion, under all of the circumstances. Such action as has been taken in this instance is exceptional because ordinarily a petitioner is obliged to be fully prepared to present all of his proof when his case is tried; cases cannot be tried piecemeal in the Tax Court. The action which has been taken in this instance should not be regarded as a precedent which might be followed in another case. The additional evidence which has been received consists of a deposition of Norman Willett which was taken in Louisville, Kentucky, where these cases originally were tried, and exhibits which he produced in connection with his testimony. Norman's testimony is lengthy, detailed, clear, and convincing. He produced statements of his bank account in the California bank at Hollywood, California which showed his deposits; he produced cancelled checks showing his use of withdrawals from his bank account; he produced copies of his income tax returns and other material. Such evidence shows that Norman participated *225 in discussions of the partnership's business at meetings in Bardstown when he visited his parents; that he was informed of the partnership's business and expressed his opinions in correspondence between himself and some of the partners and that he received periodically financial statements of the business. It also shows that Norman withdrew from the business for his own use, profits which were credited to his individual capital account in the partnership's books, and that upon dissolution of the partnership he received his proportionate share of the remaining assets. Such evidence establishes that he had dominion and control over the partnership interest which his father gave him. It also shows that he intended to enter into the partnership in the present conduct of its business. Upon consideration of the additional evidence now before us, and further consideration of the entire record, we find and hold that Norman received a completed gift from his father in January 1945 of a 286/500 interest in the partnership, and that he was a bona fide partner. Our original Findings of Fact and Conclusions of Law with respect to the question which involves Norman are modified accordingly. *226 We need not repeat here what has been stated in the original opinion in this case on the point that it is not necessary that the capital contributed by a partner shall have "originated" with him. We are satisfied that under the facts now before us there was a valid and completed gift of capital to Norman, and that he used the gift as his contribution of capital to the partnership with the intent of joining with the others in the present conduct of the partnership business. Theodore D. Stern, 15 T.C. 521; Edward A. Theurkauf, 13 T.C. 529; Seabrook v. Commissioner, 196 Fed. (2d) 322, 326; Commissioner v. Culbertson, 337 U.S. 733. Respondent's determination that Norman was not a bona fide partner is reversed. Decisions will be entered under Rule 50. Footnotes
1. The following proceedings have been consolidated herewith: Docket No. 47501, Mary T. Willett; Docket No. 47502, John T. Willett; Docket No. 47503, Thompson Willett, and Docket No. 47504, Thompson Willett and Virginia S. Willett.↩